# WHEELING.

WOODS, *Special Commissioner, v.* DOUGLAS *et al.*

Submitted February 1, 1899—Decided June 17, 1899.

1. SUBROGATION—*Sureties—Real Estate.*

Where land is sold by a special commissioner, who takes notes, with sureties, for the deferred installments, and the purchaser failing to pay said purchase money notes, or any of them, said special commissioner takes judgment on said note or notes against the purchaser and his sureties, and one of the sureties against whom judgment is taken pays off said judgment, he will thereby be entitled to be subrogated to the liens created by taking said judgments and docketing same, not only against the land so sold, but any other real estate owned by said purchaser, situated in the county in which such judgment is docketed. (p. 666.)

2. SUBROGATION—*Priorities—Liens.*

The right of subrogation thus acquired will entitle such surety so paying said judgment to priority over a trust lien executed and recorded on other real estate situated in said county after such judgment was recovered and docketed, should it become necessary to resort to it for satisfaction. (p. 667.)

3. EQUITY—*Answer—Affirmative Relief.*

Where a party is not made defendant in a suit in equity, and files a paper in the case, which he terms an "answer and petition," in which he prays for affirmative relief, and sets up affirmative matter, but upon which no process issues, he can thereby obtain no affirmative relief against a defendant in said suit. (p. 665.)

Appeal from Circuit Court, Barbour County.

Suit by Samuel V. Woods, special commissioner, against

S. C. Douglas and others.   Judgment for complainant, and defendant J. N. B. Crim appeals.

*Reversed.*

MELVILLE PECK, for appellant.

S. V. WOODS, W. T. ICE, and FRED O. BLUE, for appellees.

ENGLISH, JUDGE:

On the 13th of July, 1888, Samuel V. Woods, as special commissioner, sold certain mill property, houses and lots in the town of Philippi, Barbour County, under a decree of court, to S. C. Douglas, for the sum of nine thousand, and fifty dollars, with which purchase said Douglas failed to comply, and by a subsequent decree of court said property was again offered for sale by said special commissioner, and again sold to said Douglas at the price of seven thousand, eight hundred dollars, the purchaser paying one thousand dollars cash, and executing three joint and several obligations for two thousand, two hundred and sixty-six and two-thirds dollars each, payable in one, two, and three years, with interest, dated July 16, 1888, for the residue, which sale was afterwards confirmed, saving the right to those entitled thereto to proceed against said Douglas for one thousand, two hundred and fifty dollars, the difference between said first and second sales to him. · On July 19, 1888, a rule was awarded against said Douglas to appear and show cause, if any he could, why he should not be required to pay into the court the said $1,250, and the special commissioner was directed to withdraw and collect the said purchase-money notes as they severally fell due, and to retain the same, subject to the order of the court.   These proceedings were had in the chancery suit of Benjamin B. Stout and others against the Philippi Manufacturing & Mercantile Company, which was pending in the circuit court of Barbour County.   On the first Monday in April, 1894, said Woods, special commissioner, filed his bill in the circuit court against S. C. Douglas, J. N. B. Crim, S. J. Heatherly, J. E. Heatherly, H. F. Brohard, A. G. Dayton, trustee, Case Manufacturing Company, Samuel Woods, and C. Kelley, reciting therein the above facts in regard to the sale of said real estate, and further alleg-

ing that, said purchase-money notes being unpaid at their maturity, he brought an action of debt in the circuit court on the first of said notes, and on April, 1890, said Douglas confessed a judgment thereon for two thousand, five hundred dollars and thirteen cents, with interest from that day, and three dollars and seventy-five cents costs, and on the second of said notes he recovered a judgment on August 30, 1890, for two thousand,five hundred and fifty-four dollars and ninety cents, with interest from that day, and nine dollars and eighty-five cents costs, and on November 16, 1890, he recovered a judgment upon said second note against said Crim and Heatherlys for two thousand, five hundred and eighty-four dollars, with interest from that day, and fourteen dollars and seventy-five cents costs; that, in addition to said down payments of one thousand dollars made July 16, 1888, he has collected the following amounts from said Crim:   On September 5, 1891, the sum of two thousand, six hundred and forty-seven dollars and forty-five cents, on September 16, 1891, two thousand dollars, and on September 28, 1891, sixty-six dollars and forty-seven cents,—and that all the residue of said purchase-money remains unpaid to the plaintiff; that such further proceedings were had that at the February term of court, 1894, S. C. Douglas, upon said rule, was ordered to pay the plaintiff, on account of the difference between the said two sales, the further sum of one thousand, two hundred and fifty dollars, with interest from July 13, 1888, which has never been paid, but upon which plaintiff is informed he is entitled to be credited with forty-seven dollars and fourteen cents. The plaintiff also charges that, as he has never conveyed to S. C. Douglas the real estate purchased by him on the 16th of July, 1888, the one thousand, two hundred and fifty dollars, with interest from July 13, 1888, on account of the difference between said sales, constitutes a vendor's lien upon the real estate sold him by the plaintiff. This real estate consisted of a lot of ground in Philippi, containing one and one-fourth acres, on which there was a steam flouring mill and a planing mill; also a residue of three-fourths of an acre conveyed to said company by C. C. Hovatter and wife, on which is a dwelling house. Plaintiff further alleges that the amount due him on May 22, 1894, including said one thousand, two hundred and fifty dollars,

with interest on the whole of said purchase until that day, is six thousand, one dollar and eleven cents, all of which constitutes a lien on said real estate sold by plaintiff to said Douglas, and that his three judgments against Douglas were docketed in the judgment lien docket of said county in the order in which they were recovered,—on April 5, 1890, August 30, 1890, and December 17, 1890,—and constituted judgment liens upon all the other real estate owned by said Douglas superior to the trust liens thereon, and no executions have ever been issued upon said judgments. Plaintiff further charges that said Douglas is the owner of two tracts of land in said county on Elk creek, one containing one hundred and twenty-two acres, the other adjoining tract containing twenty-four and one-half acres, and another of ninety-six acres adjoining same; that he also owns a lot containing six-sevenths of an acre in the town of Belington, in said county, upon which is a flouring mill; that, after the recovery of his judgments, and after the same were docketed, said Douglas conveyed all of said tracts on Elk creek in trust to A. G. Dayton, trustee, to secure H. F. Brohard a debt of three thousand dollars, payable in five years, with interest from February 1, 1893, payable annually, and in default of the payment of interest the whole of the debt to become payable; also that after said judgments were docketed, to wit, on the 11th of February, 1893, the said Douglas conveyed the lot in Belington to Dayton, trustee, in trust to secure a debt of one thousand, three hundred dollars due the Case Manufacturing Company, of Columbus, Ohio, by two notes of $650 each, dated October 10, 1892, payable in six and twelve months, with interest; also on August 30, 1893, a judgment was recovered by C. Kelley, for the use of Samuel Woods, against said Douglas, for one hundred and ninety-six dollars and seventy-nine cents, with interest from that day, and two dollars and twenty-five cents costs; and there are no other liens on said lands. Plaintiff further charges that said one thousand, two hundred and fifty dollars, with interest thereon from July 13, 1888, is a vendor's lien upon the property sold to Douglas by him, for which he has no other security, and that the residue of the debts due him are also a vendor's lien upon the property sold to Douglas by the plaintiff on July 13, 1888, and constitute a judgment lien

upon all of his other real estate superior to all other liens thereon, and is also a lien prior in point of time to said trust liens and the lien of the judgment of said Kelley; and the said Douglas owns no other real estate except that hereinbefore set forth, and his personal property is wholly insufficient for the payment of the debts due plaintiff which are in judgment; and that said Dayton, trustee, had notice before the execution or recordation of either of said deeds of trust of the proceeding in said original chancery cause to charge said land sold to Douglas with the debt of one thousand, two hundred and fifty dollars and interest as a vendor's lien; and he prays that said one thousand, two hundred and fifty dollars, with interest, may be fixed as a vendor's lien on the property sold by him to Douglas superior to all other liens thereon; that the residue of the debts due him may be charged as a vendor's lien, and also a judgment lien upon the other real estate of said Douglas, and first in priority thereon; that the real estate of said Douglas may be subjected to the payment of the debts chargeable thereon; and for general relief. J. N. B. Crim filed his answer to this bill, admitting that he was one of the sureties of said Douglas upon his purchase-money obligations to the plaintiff for said mill property, and alleges that he, as such surety, has paid plaintiff, September 5, 1891, two thousand, six hundred and forty-seven dollars and forty-five cents, September 16, 1891, two thousand dollars, September 28, 1891, sixty-six dollars and forty-seven cents, for which sums he claims the rights of plaintiff in regard to the lien upon said real estate, and said sums of money paid back to him out of the sale of said property, that prior to January 1, 1891, he and said Douglas were partners in said mill property, he owning one-fourth interest, which he had fully paid for, and that day he sold his interest to said Douglas for one thousand, nine hundred and fifty dollars; that one thousand, eight hundred dollars of said sum was for the real estate and one hundred and fifty dollars for his interest in the personal estate then in hand; and he conveyed said interest to Douglas, retaining a lien on said one-fourth interest. Said Crim also alleges that plaintiff has shown by his bill that he has, by virtue of the judgments recovered by him on his purchase-money note, six liens for his money on other valuable real estate of said

Douglas, as well as upon the said mill property, while respondent has a lien only on said one-fourth of said mill property for his purchase money, one thousand, eight hundred dollars, with interest; and having paid, as security, the large sums of money aforesaid to the plaintiff on said judgments against Douglas, he claims the right in this cause to have the real estate of said Douglas so marshaled that respondent may have the said judgments paid out of other lands of Douglas, saving thereby the mill to pay his one thousand, eight hundred dollars of purchase money; and he prays that he may be substituted by the court to all the rights of plaintiff against said Douglas as to all of his payments upon purchase money for said mill property made to plaintiff; that the judgments recovered by plaintiff against Douglas, and upon which respondent has made his said large payments, may be pushed over off of the one-fourth of said mill property upon the other real estate of Douglas, and paid out of the proceeds thereof, and that said one-fourth may be subjected to the payment of his lien for one thousand, eight hundred dollars. H. F. Brohard and S. C. Douglas also answered the bill, and T. B. Douglas filed what is termed an "answer and petition," not having been made a party defendant. The cause was twice referred to a commissioner, and reports filed, both of which were excepted to, and depositions taken, and filed. Columbus Kelley also filed a petition in the cause with reference to the one thousand, four hundred dollars debt. On the 16th of November, 1897, a final decree was entered, in which, after providing for the payment of certain costs and taxes therein mentioned, and applying the money in the hands of the special commissioner accruing from the rental of the property, the court overruled the exceptions to the commissioner's report filed by Crim, Brohard, Edgar Douglas, William Douglas, and T. B. Douglas, and confirmed the same as modified by the decree, holding that the lien reported by said commissioner in favor of said Crim on account of the judgments of said special commissioner discharged by him, amounting to two thousand, eight hundred and twenty-three dollars and six cents, should be second in order of priority, and that the third purchase-money note reported by the said special commissioner in favor of the said Crim as a lien second in order of priority

upon the said property, amounting to three thousand, six hundred and twenty-three dollars and thirteen cents, should be made third in order of priority, and said report was reformed accordingly; ascertained the real estate belonging to said Douglas, and the first lien upon all said real estate in Philippi sold to S. C. Douglas by said special commissioner is the sum of two hundred and thirty-four dollars and twenty-two cents, with interest thereon from October 30, 1897, in favor of T. B. Douglas; proceeded to fix the amount and priority of the lien of said special commissioner, J. N. B. Crim, and T. B. Douglas upon the property in Philippi, and, in case of its insufficiency to satisfy the same, fixing the manner it shall be paid out of the proceeds in the Belington mill property, after the payment therefrom of the trust debt in favor of Edgar and William Douglas for one thousand, six hundred and thirty-one dollars and seventy cents, which was fixed as a first lien on said Belington mill property; the next in order of priority to be paid out of the proceeds of the mill property being a debt of one thousand, six hundred and thirty-one dollars and seventy cents with interest, in favor of E. and W. Douglas, assignees of George M. Seprell, who was assignee of the Case Manufacturing Company,—the same being a first lien thereon; the debt next in priority to be charged upon the proceeds of said Elk farm of two hundred and forty-one acres being a trust debt in favor of H. F. Brohard for three thousand, eight hundred and fifty-four dollars and fifty cents; the next in order of priority, and next entitled to be paid out of the proceeds of said property in Philippi after the payment of the specific liens thereon therebefore fixed, and after the payment of the two thousand, five hundred and thirty-eight dollars to said Crim out of the proceeds of one fourth thereof, if any there be, after the aggregate of the liens on said Philippi property as therein fixed has been fully paid; next fixing the amount and priority of certain judgments which are to be paid from the proceeds of all of said real estate after the payments of the above-mentioned liens in the order therein fixed; and, it appearing that the debt of four hundred and eighty-one dollars and ninety-eight cents in favor of the Tygart Valley Bank has been paid, the same was not decreed for, and no action was taken upon the petition of C. Kelley; and it was

decreed that, unless S. C. Douglas should pay, within thirty days from the adjournment of the court, to said several creditors, the debts decreed to them, respectively, a special commissioner, therein named, be directed to sell said several parcels of land upon the terms therein specified. From this decree J. N. B. Crim appealed.

The first error claimed is that the court allowed several small claims for costs to B. B. Stout, the Novelty Mill Company, the Cleveland Dryer Company, T. Ault & Son, and Nardyke, Norman & Co., no claim whatever having been made to such debts till the final 'decree was entered; the court reciting that the costs accrued by reason of the cases against the Philippi Manufacturing & Mercantile Company and others being kept on the docket for the benefit of the fund, and the claims thereto coming from S. C. Douglas through the hands of Special Commissioner Woods. The rule as to awarding costs in courts of equity is found in 5 Enc. Pl. & Prac. 184, where it is said: "The awarding of costs in cases in equity is said to rest in the sound discretion of the court, but this does not mean that such discretion may be exercised arbitrarily or capriciously." I can see no good reason why these costs should take precedence over the claims of appellant, especially as they are not mentioned in the pleadings, and it in no way appears what disposition was made of the cases in which they accrued, which, if made to appear, would indicate their proper place in point of priority.

As to the second point relied on as error by the appellant, the court clearly erred in decreeing that T. B. Douglas should have, as the first lien on the real estate of S. C. Douglas in Philippi, the sum of two hundred and thirty-four dollars and twenty-two cents for the following reasons: He was not made a party defendant to plaintiff's bill, but on November 5, 1897, he filed what he designates as an "answer and petition," and prayed for affirmative relief against S. C. Douglas, assignor, and J. N. B. Crim, assignee, of the one thousand, two hundred dollars, to which the plaintiff replied generally, and no process was awarded or executed on said answer. See *Goff* v. *Price*, 42 W. Va. 385, (26 S. E. 287,) where this Court held that an answer under section 35, chapter 125, of the Code, containing new matter constituting a claim for affirmative relief, may be

taken for confessed as against the plaintiff, but not against another defendant without service of process to, reply to it. It is claimed by appellant—I think correctly—that it was error to apply the portion of the debt due him by assignment from S. C. Douglas (that is, said Douglas' portion of the one thousand, four hundred and four dollars, with its interest) to the payment of the debt of Woods, special commissioner, whose judgments were liens on other real estate of S. C. Douglas, while appellant still held the third purchase-money note on the Philippi property, which had not been reduced to judgment. It is also assigned as error to decree the judgments of Woods, special commissioner, and appellant against the undivided fourth of the mill property which said Crim had sold to Douglas, and upon which he held a vendor's lien prior to the debt of Brohard, simply to save the Elk farm from Brohard's debt. This claim I regard as correct, for the reason that S. V. Woods, as special commissioner, had taken judgments upon the purchase-money notes, and had the same docketed long before the deed of trust to secure Brohard was executed and recorded; and Woods, as special commissioner, having, by docketing said judgments, created a lien upon all the real estate of said Douglas in Barbour County, and having a right to resort thereto for the payment of his judgments, while the appellant could look only to the Philippi property for payment of his lien, equity would compel said Woods to so enforce his judgment liens as not to deprive appellant of the benefit of his lien.

It is also pointed out by the assignment of errors that said decree is inconsistent, in this: that while, in one clause, it provides, if the property in Philippi should not sell for enough to pay the debts of T. B. Douglas, S. V. Woods, special commissioner, J. N. B. Crim, and the costs of suit, the residue should be a first lien on the Belington mill property, and first paid out of the proceeds of the sale thereof; and in the next clause it fixes the trust debt in favor of Edgar and William Douglas for one thousand, six hundred and thirty-one dollars and seventy cents as the first lien on the said mill property. This portion of the decree must be regarded as erroneous, not only on the ground of its inconsistency, but because the judgments mentioned were liens upon said Belington mill property long anterior

to the execution and recordation of the trust deed in favor
of Edgar and William Douglas.  There can be no question
that Crim, being surety for S. C. Douglas for the purchase-
money of the Philippi property to said special commissioner,
had the right to pay said purchase money, and was forc-
ed to pay the same, and was entitled to be subrogated to
the rights of S. V. Woods, special commissioner.  It must
be borne in mind that this is a proceeding in equity on the
part of S. V. Woods, special commissioner, against S. C.
Douglas and his sureties, to collect the purchase money
remaining unpaid to him as special commissioner by reason
of the sale of the Philippi property; and, such being the
case, said S. V. Woods, special commissioner, was aware
that Crim was the surety of S. C. Douglas on the note so
executed for the purchase money of said Philippi mill prop-
erty, and he also knew that Crim, as such surety, paid the
third purchase-money note.  Said special commissioner had
taken judgments on the first two notes, and docketed them,
thereby constituting liens on all the real estate of S. C.
Douglas in Barbour County.  Crim, having paid said third
purchase-money note as the surety of Douglas, was enti-
tled to step into the shoes of S. V. Woods, special com-
missioner, as to his rights against the Philippi property;
but, no judgment having been taken on said third note,
he could not resort to the other real estate of Douglas in
the county for the payment of that note.  Now, can it be
possible that Douglas, being aware of these facts, could,
by conveying his other real estate in Barbour County to
a trustee, or any other person, give such grantee prece-
dence over the docketed judgments of S. V. Woods, special
commissioner, and compel him to satisfy his judgments
out of the Philippi property, and thus  consume the only
means to which Crim (who had befriended him by becom-
ing his surety and paying his debts) could resort for pay-
ment?  When Brohard and the Case Manufacturing Com-
pany took their trusts upon the other real estate of Doug-
las, they had notice of the docketed judgments against him,
and that they constituted liens upon the property they were
taking their trusts upon, and this was sufficient to put them
upon inquiry, and upon proper investigation they would
have ascertained that the notes which said  judgments were
obtained were for part of the purchase money of the Philippi

property; that there was a third note upon which judgment had not been taken, but which had been paid by Crim, as surety for Douglas; that Crim, having paid it, was entitled to substitution as against the Philippi property alone, while Woods had a right to resort to the other real estate of Douglas for the satisfaction of his judgments, and equity would compel him to do so if the Philippi property was not sufficient to pay both Woods, as special commissioner, and Crim. Having notice of said docketed judgments, could Brohard and the Case Manufacturing Company compel Woods, special commissioner, to resort thereto for the satisfaction of said judgments? In the circumstances of this case, to do so would be to require Crim, who, as surety of Douglas, had paid for the property, to pay a considerable portion of the purchase money a second time, and this would not be equity. Crim, having paid the third purchase money note as surety, is entitled to have the amount reimbursed to him out of the Philippi property, and said judgments must be made out of the residue of the Philippi property, and, if that is insufficient, after the payment to Crim of said third note they are entitled to satisfaction out of the other real estate of said Douglas in Barbour County.

An effort was made to show that Crim was a partner in the purchase from S. V. Woods, special commissioner, of the Philippi property, but this contention was not sustained by the evidence, and the argument predicated thereon must fall.

For these reasons the decree complained of is reversed and the cause remanded.

NOTE BY BRANNON, JUDGE:

I agree to a reversal, but not for all the reasons given by JUDGE ENGLISH. Crim has preference for money paid as surety over the trust creditors. When a judgment is paid it is ended at law, and equity will not keep it alive for subrogation to prejudice an innocent purchaser, but will let the rule at law prevail. *McClaskey* v. *O'Brien*, 16 W. Va. 781, point 7; 2 Bart. Ch. Prac. 1052, 1053; Sheld. Subr. § 34. If the man taking a deed of trust knows that the surety, as such, paid the debt, the surety would get subrogation over him, but not otherwise Brandt. Sur. § 316. *Ahern* v. *Freeman*, [Minn ] 48 N. W. 677; *Riefe* v. *Elting*, [Iowa] 56 N. W. 285. The judgments were docketed, and constructive notice is, for general purposes, equal to actual notice, and, if so in the present case, it would give Crim pref-

erence. Docketing gives notice of the judgment, but does it go further, and require a subsequent purchaser, who learns that the judgment has been paid, to know also that one of two debtors paid it, and that he was surety? Must he make further inquiry as to this. May he not rather presume that the principal debtor paid, as held in *Ahern* v. *Freeman, supra?* If this is not true, you make the docket import what it does not say,—that is, that one of the debtors is principal, the other, surety; and also that the surety paid the judgment. It cannot go so far. Subrogation is the creature of equity to do justice,— a latent equity; an equity will not affect an innocent purchaser for value with a latent equity. See *Sherman's Adm'r* v. *Shaver*, 75 Va. 8; 1 *White & T. Lead. Cas. Eq.* (4th Am. Ed.) pt. 1, p. 152. Though it is broadly stated that marshaling will not be enforced to the prejudice of third parties, yet that statement is too broad, for it seems that, when once the right of a creditor having a lien on one property to compel another creditor having a lien on two properties to subject, in the first instance, the property on which the junior creditor has no lien, exists, it is good against a third subsequent lienor, though not against one antedating the one who asks the marshaling, because he had this right when the third party's right began. 2 Beach, Mod. Eq. Jur. § 785, says this is the general rule, citing *Ball* v. *Setzer*, 33 W. Va. 444, (10 S. E. 798) *Crawford* v. *Richeson.* 101 Ill. 351, and other cases. Under this principle, as the trust debts are later in date than the Crim debt for the price of the fourth of the mill sold to Douglas, Crim has the right, in the first instance, to put Woods to three-fourths of that mill and the other realty, so as to let Crim's purchase money be paid out of that fourth. Under some authorities, even this is doubtful. Sheld Subr. § 65.

*Reversed.*