# CHARLESTON.

CENTRAL BANKING AND SECURITY COMPANY v. UNITED STATES
FIDELITY AND GUARANTY COMPANY.

Submitted January 11, 1912.    Decided November 11, 1913.

1. EXECUTORS AND ADMINISTRATORS—*Bond—Validity.*
    A bond of a personal representative, taken by an officer without authority and voluntarily given, is valid as a common law obligation and enforcible as such, in the absence of a statutory prohibition of such construction. (p. 200).

2. SAME—*Administrator's Bond—Validity and Effect.*
    Bonds given by a personal representative before the clerk of a

county court in the vacation of the court, as new bonds, after he had previously qualified and given bond, are not substitutes for the original bond, but are valid and enforcible as additional ones and as further security; and, in case of necessity for contribution among the sureties, the proportion of contribution is determinable by the penalties of the several bonds.   (p. 200).

3.   SAME—*Administrator's Bond—Construction.*

A recital in such a subsequent bond of the tender thereof in lieu of the preceding one, in compliance with a desire on the part of the principal therein to release the surety in it from further liability, is not a stipulation or covenant for indemnity of the surety in the preceding bond.   (p. 201).

4.   SAME—*Res   Adjudicata — Administrator's   Bonds — Contribution   Among Sureties.*

A decree in a suit by the distributees of the estate for the benefit of which such bonds were given against the principal and sureties in all of them, dismissing the bill as to the sureties in the subsequent ones, on their separate demurrers thereto, does not conclude the surety in the original bond in a subsequent suit against the sureties in the others for contribution, under the principles of *res judicata,* after payment and satisfaction of the liability to the estate by the surity in such first bond.   (p. 203).

5.   SAME.

The cause of action in such subsequent suit is separate and distinct from that involved in the first and is not, therefore, merged in the decision therein.   In such case, the decree in the first suit does not bar the second, unless the question of liability involved in the second was actually put in issue by proper pleadings and decided in the first.   (p. 203).

(WILLIAMS, JUDGE, dissenting.)

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Wood County.

Suit by the Central Banking & Security Company against the United States Fidelity & Guaranty Company and others. From decree for defendants, plaintiff appeals.

*Affirmed.*

*Merrick & Smith,* for appellant.

*Van Winkle & Ambler* and *J. M. Hamilton,* for appellees.

POFFENBARGER, PRESIDENT:

After the Central Banking & Security Company, surety in one of the bonds of Amnon Taylor, administrator of Tasriel

Taylor, had paid the decrees pronounced against it, as corrected and affirmed by this Court, in *Taylor* v. *Taylor,* 66 W. Va. 238, it brought this suit, primarily for indemnity and secondarily for contribution, against the United States Fidelity & Guaranty Company, of Baltimore, Md., and the Citizens Trust & Guaranty Company, of Parkersburg, W. Va., sureties in the two subsequent bonds given by Taylor as administrator of the same estate. The prayer of the bill is in the alternative. The plaintiff claims the subsequent bonds operate in law as full and complete indemnity, requiring the sureties therein, or one of them, to reimburse it to the extent of the whole amount it was compelled to pay as Taylor's surety. It had become the surety in a $6,000.00 bond given in February, 1903. In July, 1904, the United States Fidelity & Guaranty Company gave, before the clerk of the county court of Calhoun county, another bond in the same penalty, and in July, 1905, the Citizens Trust & Guaranty Company became surety in a third bond in the same penalty and given in the same way. Each of these subsequent bonds contains a recital of desire on the part of the principal therein to release the surety in the preceding one from further liability and of tender thereof in lieu of the preceding one. The claim for complete indemnity and full reimbursement is predicated upon this recital. In the case of *Taylor* v. *Taylor,* the distributees of the Taylor estate sued the principal and sureties in all three of the bonds, and the trial court sustained the demurrers of the United States Fidelity & Guaranty Company and the Citizens Trust & Guaranty Company and dismissed the bill as to them. It held the Central Banking & Security Company liable as surety in the first bond and it appealed from the decree. The sureties in the other two did not appeal and the dismissal as to them remains unreversed. As the bill in this cause exhibits the printed record of the former one, showing all the proceedings had therein, as well as the mandate and opinion of this Court in it, the defendants herein, in their separate demurrers thereto, relied principally upon said dismissal of the former bill as an adjudication in their favor, not only against the plaintiff in the former suit, but as against the alleged co-surety, the plaintiff here. The demurrer of the United States Fidelity & Guaranty Company to this

bill was unqualifiedly overruled and that of the other defendant partially sustained, but the bill was not dismissed as to it, the court deeming it a proper party but not subject to direct liability. Thereafter the United States Fidelity & Guaranty Company filed its answer and answer in the nature of a cross bill, praying affirmative relief against the Central Banking & Security Company, the Citizens Trust & Guaranty Company and the administrator and heirs of Taylor, the purpose of which was, in the main, to demand indemnity from the Citizens Trust & Guaranty Company, its successor in the bond as surety, or rather the surety in the last of the three bonds. The Citizens Trust & Guaranty Company filed its answer to the original bill and also to the cross bill, and upon these pleadings and general replications of the plaintiff to the answers and a stipulation as to the facts, the court held the parties to be co-sureties and required each of the two defendants to pay to the plaintiff one-third of the amount it had been compelled to pay at the suit of the distributees of the Taylor estate. From this decree, the Central Banking & Security Company has appealed, complaining of the disallowance of full indemnity against the other companies and also of the denial of contribution as to the costs and expense incident to its defense in the cause of *Taylor* v. *Taylor*. Denying liability for contribution or indemnity, the two defendants cross-assign error in the enforcement thereof and resist the further claims of the appellant.

In the cross-assignments of error, the validity of the two subsequent bonds is denied on account of lack of authority in the clerk of the county court of Calhoun county to take them. As is shown by the report of the decision in *Taylor* v. *Taylor*, these two bonds were taken by the clerk in the vacation of the court, and he had no authority, under the statute, to take them as substitute bonds, each releasing the preceding one. The contention in that cause was that they were such bonds and that there was no liability except upon the last one, the one in which the Citizens Trust & Guaranty Company was the surety. In the rejection of this claim and contention, the question of the validity of the two subsequent bonds as additional ones was left open and undecided. As the statute nowhere confers upon the clerk authority to take a new bond

from a personal representative or other fiduciary and makes it his duty to report to the court the necessity thereof, it may well be conceded he had no authority to take either of the two substitute bonds, but their absolute invalidity and worthlessness does not necessarily follow. Every bond taken without authority in the officer who took it is not void. Such bonds are often held good as common law obligations. Numerous authorities holding them void, are cited in support of the cross-assignments of error, but the bonds in those cases were, for the most part, held void because the taking thereof contravened a principle of public policy. Most of them were recognizances under which officers had discharged prisoners. One of them, involved in *Benedict* v. *Bray*, 2 Cal. 251, was a void attachment bond, but the opinion is unsatisfactory. It assumes, contrary to almost uniform authority, that all bonds, taken by officers not authorized to take them, are void. The law on this subject was summarized by Judge GREEN in *Porter's Exr.* v. *Daniels*, 11 W. Va. 250, in the following terms: "The mere fact that a bond not authorized by law has been taken by an officer, does not render such bond invalid at common law. Such bonds have been frequently held void at common law, but wherever so held, it has been not simply because taken by an officer without authority, but for other and sufficient reasons appearing in each particular case; such as that they were not voluntarily executed; that they were given to the officer, to induce him to violate his duty as such officer; or to induce him to perform a duty, he was bound to perform without the giving of such bond; that the taking of the bond was oppressive, and it was given without consideration; that the obligee in the bond had no interest in the subject matter; that the taking of the bond was a violation of public policy, or was executed under circumstances, or contained provisions, which would have rendered a private bond void at law." These bonds were voluntarily given for consideration paid to the sureties, and neither the acceptance nor the giving of the same contravenes any principle of public policy. Hence they are clearly good as common law obligations.

That they were not substitute, release or indemnity bonds as matter of law or by force of the statute, was decided in the case of *Taylor* v. *Taylor*. It is said, however, the parties ex-

pressly made them such by stipulation. The only matter relied upon as evidence of such an undertaking is the recital in each of the subsequent bonds as to the motive or purpose of the giving of the same. It says the new bond was tendered in lieu of the old one in compliance with a desire of the principal therein to release the surety in the preceding one from further liability, not from all liability. It proves a tender of the subsequent bond in lieu of the preceding one for the purpose of releasing the former surety from further liability, but it is not a covenant of indemnity for breaches of the condition of the former bond. The assumption of this grave responsibility must be imposed by implication, if at all, and the implication does not necessarily arise from the terms used. Generally a provision, fact or purpose is not read into an instrument as having been implied, unless necessity therefor is found in the terms used, or purpose expressed therein. *White* v. *Bailey,* 65 W. Va. 573; *Morgan* v. *Railroad Co.,* 96 U. S. 716; *Turnpike Co.* v. *People,* 9 Barb. 161; *Jackson* v. *Lewis,* 17 John. 475; *United States* v. *Fisher,* 2 Cranch 358; Chitty on Cont., p. 113; Ham. Cont., pp. 811, 813, sec 412; Dev. Deeds, sec. 836. The implication is said to arise here out of the fact that the bond given is such a one as would have been required by the court, under the provisions of section 10 of chapter 87 of the Code, and must therefore be considered as having been given with intent that it should operate as a statutory bond would; but the circumstances contemplated by said section were not disclosed at the time these bonds were given. The court had not ordered a new bond, nor does it appear that necessity for one had been shown by the report of the clerk or a commissioner, or evidence produced by a surety or other person interested. It cannot be assumed that, under such circumstances, either of the two defendants would have executed a subsequent bond. If the Central Banking & Security Company had moved the court to be released as surety, the United States Fidelity & Guaranty Company would have at once suspected some default on the part of the principal, or some other good and sufficient cause for refusal of the surety to remain on his bond, and would almost certainly have refused to take its place. The same observations may be made as to the Citizens

Trust & Guaranty Company. In either case, there would have been a previous ascertainment of the condition of the decedent's estate in the hands of the administrator and of his ability to make good any *devastavit* committed by him or other default in the conduct in this trust. No such investigation was made because no steps had been taken that were suggestive of any default or irregularity in the administration. Had there been a previous order of the court requiring a new bond, it would have suggested irregularity and failure of duty on the part of the principal which would no doubt have prevented the giving of a new bond and left the surety in the first one liable for the entire default. In view of these facts, the authorities do not sustain an implied undertaking on the part of the sureties in the subsequent bonds. To confer a right or impose an obligation by implication, the intention arising out of the terms used or the purpose of the instrument and circumstances under which it was given must be so strongly apparent that the contrary thereof cannot be reasonably supposed. The implication must be a necessary one, as is shown by authorities already cited.

Being valid obligations and yet not substitute bonds, and having been given for the same principal as the one for whom the first bond was given, and to guarantee faithful execution of the same trust, the two subsequent bonds are mere cumulative or additional bonds, and the sureties therein are co-cureties with the surety in the first one. Brandt, Suretyship & Guar. sec. 707. "Successive bonds given by guardian are cumulative sureties for the faithful performance of the duties of the office, and the liabilities of the sureties are in proportion to the penalties of the several bonds in which the respective sureties bound themselves." *Jones* v. *Hayes*, 3 Ired. Eq. 502, 44 Am. Dec. 78. "In all these cases the sureties have a common burthen; they are joined by the common end and purpose of their several obligations, as much as if they were joined in one instrument, with this difference only, that the penalties will ascertain the proportion in which they are to contribute, whereas if they had joined in one bond, it must have depended on other circumstances." *Dering* v. *Winchelsea*, 1 Cox's Ch. Cas. 318.

That the dismissal of the bill in the cause of *Taylor* v.

*Taylor* as to the sureties in the two subsequent bonds is not an adjudication against the right of contribution nor as between the sureties, is obviously apparent from principles enunciated in *Pomeroy National Bank* v. *Huntington National Bank,* not yet reported; *Hudson* v. *Land & Mining Co.,* 76 S. E. 797; and *Biern* v. *Ray,* 49 W. Va. 129. That all three of the sureties were parties to that suit, relating to the bonds in which they were sureties, is not conclusive. Even though parties to a subsequent suit are the same as those to the prior one, a former decision is not conclusive in the second one and does not bar it, unless the cause of action in the two suits is the same. If the second one is founded upon a different cause of action from that involved in the first, the former adjudication is conclusive only as to matters actually litigated and decided in the first suit. In *Hudson* v. *Land & Mining Co.,* cited, these propositions were stated as follows: "When the cause of action in the second suit is the same as that in the first and the parties are identical, they are concluded, not only as to what was actually decided, but also as to all matters which the plaintiff could have adduced to sustain his claim and which the defendant could have pleaded or proven in defense of the action. In such cases, there is no inquiry as to what was actually decided, as contradistinguished from things which could have been decided or may have been. But the principle applies in cases in which the parties to the second suit are the same as those of the first and the cause of action is not the same, so as to prevent a trial in the second suit of a question settled and determined in the first; but the rules in such cases are different. In them, it becomes necessary to ascertain whether the particular question sought to be raised in the second suit was actually decided and determined in the first. This necessitates resort to the particular issues made and findings thereon."

In *Taylor* v. *Taylor,* there was no decision of any question between the sureties. There was one between the plaintiffs in that suit, the distributees of the Taylor estate on the one hand, and the principal and sureties on the other. The cause of action therein comprehended two things, the right to a proper accounting and distribution of funds by the principal

in the bond, guaranteed by the sureties, and failure of the principal to accord such right. The suit was brought for redress of wrongs done the plaintiffs. No pleadings in the cause put in issue any right of contribution or any other matter between the sureties. There was an adjudication of non-liability as to the distributees of the estate as to two of the sureties, but this was obviously not an adjudication of non-liability to their co-surety. It could not have been, for no issue of that sort was raised by the pleadings. The cause of action asserted here is a right of contribution among the co-sureties and injury by refusal of the defendants to contribute to the common burden the plaintiff had to discharge under the decree against it in the former suit. Notwithstanding the two rights grow out of the same transaction among the parties, they are not the same nor even similar. The non-identity of causes of action here asserted is well illustrated in *Coville & Garber* v. *Gilman*, 13 W. Va. 314. Under an agreement between himself and A, B sunk an oil well. A claimed B was to pay himself a reasonable price for drilling the well out of its production and thereafter the well was to belong to A. B claimed he was to sink the well and pay himself for the same out of the first oil obtained, and thereafter he and A were to be equal partners in the production thereof. On this theory of the contract, A sued B in assumpsit and recovered a judgment, on the verdict of a jury, for oil produced from the well and sold by B. Afterwards, A brought another suit in assumpsit for oil subsequently produced and sold. Then B filed his bill setting up a copartnership relation between them, and asking for a dissolution thereof and settlement of the partnership account and an injunction to prevent the collection of the judgment previously obtained. A endeavored to rely upon that judgment as an adjudication against the existence of the copartnership. To that contention this Court replied as follows: "This verdict and judgment did not establish, that there was no partnership in the oil, pumped after the institution of the first suit, even though it were proven ever so clearly, that there was and is no claim, that any partnership in any of the oil existed, except such as might have been formed by the original contract, and that, in the trial of the common law

suit, B defended himself by claiming, that this original contract.created a partnership in all the oil, pumped from the well, and obtained from the court an instruction, that if the jury believe, such partnership existed, they must find for the defendant; and that, as the question of partnership or no partnership was not *directly* involved in the pleadings, it cannot, so far as oil not sued for in that suit is concerned, be regarded, as conclusively determined by the verdict of the jury and judgment of the court, though it be shown by evidence, it was the controverted fact, on which the verdict of the jury must have been based. Nor is the verdict even evidence of the non-existence of the partnership.''

The limited application of the first proposition, namely, that everything the parties to the first action could have litigated between themselves is deemed to have been determined, in other words, is merged in the judgment, is sometimes overlooked by the courts and the principle regarded as if it were general in its application. It is for this reason more than any other, that courts sometimes fall into error in applying the principles of *res judicata,* and the doctrine is so often invoked under circumstances not justifying its application. The rule or principle by which to test the conclusiveness of former ligtigation between parties seems to have been first deduced and clearly stated by Mr. Justice Fields in *Cromwell* v. *County of Sac,* 94 U. S. 351, decided in 1876. Since that time, the rules and principles governing the doctrine have been much better understood than they were before, and there have been fewer misapplications of it. Prior to that time, many courts perceived the difference between a former judgment between the same parties upon the same cause of action as that involved in the subsequent suit, and a judgment between the same parties upon a cause of action different from that involved in the subsequent suit, and correctly applied the principles without defining the standard or test of applicability.

An attempt is made here to show identity of the present cause of action with that involved in *Taylor* v. *Taylor.* It is said the principal in the bond is the representative of the sureties, and the latter are bound by his action in all respects, so long as he acts in good faith, wherefore a judgment either

for or against him is binding upon all the sureties, not only as regards the right of the creditor or obligee in the bond, but also as regards the relation of co-suretyship. This argument is supplemented by the further proposition that the right of contribution among sureties stands only upon the principle of subrogation. Ordinarily a judgment against a principal is not evidence against the surety, unless the surety was a party to the action or was made privy thereto by notice. In the latter case, it may be evidence, but it is clearly not conclusive. There are some exceptional instances in which a judgment against the principal alone is conclusive upon the surety, as when the undertaking of the surety is that he will be liable for the result of the suit against the principal. *State* v. *Abbott,* 63 W. Va. 189; Brandt on Suretyship & Guar., sec. 802. ''A judgment against the principal alone is, as a general rule, evidence against the surety of the fact of its recovery alone, and not of any fact which it was necessary to find in order to recover such judgment.'' *Id.* sec. 803. This is given by the author as the general rule, sustained by the weight of authority. Under it, the judgment against the principal is no evidence of liability on the part of the surety. By another line of cases, the judgment against the principal is prima facie evidence against the surety, but not conclusive. Brandt, Suretyship & Guar. sec. 803. These conclusions deduced from the authorities show the principal is not the representative of the surety in any comprehensive sense of the term. If he were, the judgment against him would be conclusive upon the surety in all cases. Nor is the right of contribution derived from the equitable principle of subrogation. Contribution and subrogation are separate and distinct things, the latter being in equity a broader right and including the former, just as many other legal rights are obtainable through subrogation. Subrogation gives the surety as against the principal and co-surety, all the rights and remedies of the creditor and some of these may be legal. Subrogation is not strictly a remedy. It is an equitable principle through which the benefit of remedies is obtained. As subrogation is not recognized at all by the law courts, the recognition and enforcement of contribution in actions at law proves contribution is not dependent upon the

right of subrogation. It must be distinct from subrogation, else courts of law could not enforce it. That a surety has a right of action at law against a co-surety for contribution is well settled. Story's Eq. Jur., sec. 495; *Kemp.* v. *Finden,* 12 M. & W. 421; *Mitchell and Davis's Admr.* v. *Sproul,* 5 Marsh. (Ky.) 264; *Bachelder* v. *Fisk,* 17 Mass. 464. · The meaning of the declaration often made that contribution does not spring from contract, is sometimes misapprehended. It only means that there need not be an express contract for it. This is made clear by the opinion of Lord Chief Baron (Eyre) in *Dering* v. *Winchelsea,* 1 Cox. Ch. Cas. 316. As the sureties in that case obligated themselves by separate instruments, it was argued there could not possibly be any contract of co-suretyship between them. The Court held: ''If we take a view of the cases both in law and equity, we shall find that contribution is bottomed and fixed on general principles of justice, and does not spring from contract.'' The opinion then goes on to show many instances in which the courts of common law had always enforced contribution, not because, however, there was a contract in express terms to indemnify, but because natural justice and equity imposed the duty. In the opinion, the Lord Chief Baron said: ''Now .the doctrine of equality operates more effectually in this Court, than in a Court of law.'' This is a plain recognition of the jurisdiction of the law courts to enforce contrbution and obviously they could have none, if the right were purely equitable. The plain purpose of the argument was to dispense with the necessity of proof of an express contract for contribution or indemnity, and not to deny contribution as a legal right. Of course the relation of suretyship gives rise to equities, not cognizable by the law courts, in which contribution is included, or equities growing out of the legal right of contribution. There are grounds for interposition of equitable remedies for the protection of a surety before his right to sue at law has accrued, and to obtain greater relief than the law courts can give.

That the demand of a co-surety for contribution is a new and distinct cause of action from that founded on the contract between the creditor and the promisors or obligors in the instrument has been decided and clearly demonstrated by

the application of legal principles in *Camp* v. *Bostwick,* 20 O. St. 337. The Court held: ''The right to contribution among co-sureties is not founded upon the contract of suretyship, but is based on an equity arising from the relation of co-sureties.    *    *    *    The right of action for contribution among co-sureties accrues when one has paid more than this proportion of their liability.'' In working out this conclusion, Judge McIlvaine said: ''But this action was not founded on the note. The note was fully paid and satisfied by the payment of Giddings' judgment by Bostwick, on the 19th of November, 1866. By that payment, however, a new cause of action accrued to Bostwick against the representatives of his deceased co-surety, founded upon a 'general equity', which equalizes burdens and benefits among co-sureties. This new cause of action never did accrue to Giddings, and it first accrued to Bostwick only forty days before suit was commenced.    *    *    *    If the right of a co-surety to claim contribution rested upon the doctrine of subrogation to the rights of the creditor, the proposition might be true. The doctrine of subrogation has its origin in the relation of principal and surety, whereby a surety who pays the debt of his principal is, in equity, substituted in the place of the creditor, and is entitled to all the rights which the creditor may have against his principal. But the doctrine of contribution has its origin in the relation of co-sureties or other joint promisors in the same degree of obligation. It is not founded upon the contract of suretyship. It is an equity which springs up at the time the relation of co-sureties is entered into, and ripens into a cause of action when one surety pays more than his proportion of the debt. From this relation the common law implies a promise to contribute in case of unequal payments by co-sureties. But equity resorts to no such fiction. It equalizes burdens and recognizes and enforces the reasonable expectations of co-sureties because it is just and right in good morals, and not because of any supposed promise between them. This equity, having once arisen between co-sureties, this reasonable expectation that each will bear his share of the burden is, as it were, a vested right in each, and remains for his protection until he is released from all his liability in excess of his ratable share

of the burden. Neither the creditor, the principal, the statute of limitations, nor the death of a party, can take it away." In accordance with this view, the court further held: "The neglect of a creditor, whereby the estate of one surety is released, under the statutes of limitation, from its direct liability, does not discharge a co-surety from his liability for the whole or any part of the debt." Similarly, in *McCrorey* v. *Parks,* 18 O. St. 1, it was held that the judgment in an action by the obligee against the principal and sureties in a sheriff's bond was not *res judicata* of the right of contribution among the sureties. The principle was again judicially applied in *Koelsch* v. *Mixer,* 39 N. E. 417. In that case, Judge Minshall said: "It is not enough that an issue may have been joined between the obligee and the defendant as to the liability of the latter on the bond. Whatever the issue may have been, it was not an issue between himself and his codefendant; the plaintiff in this action, and could not, therefore, conclude the latter. Though parties to the suit, they were not such in an adversary character, being simply co-defendants to the suit on the bond. The plaintiff in this suit could not, in the former suit, as a matter of right, have insisted on the admission or rejection of evidence on the trial of the issue; had no right to move for a new trial, nor prosecute error if aggrieved by the rulings of the court; and hence he cannot be held bound by the judgment in any subsequent litigation to which he may be a party." He then states the limitation upon the doctrine of *res judicata* as follows: "It is the general rule that parties to a judgment are not bound by it, in a subsequent controversy between each other, unless they were adversary parties in the original action", and cites abundant authority to sustain the proposition. This is only another way of saying the former judgment, to be conclusive, in the absence of a showing of an express decision of the question in the later one, must have been upon the same cause of action, and fully harmonizes with the principles of *res judicata* as herein stated.

To make the former judgment in such cases conclusive puts the surety at a fearful disadvantage. As shown by Judge Minshall, he has no control of the action on the bond and is at the mercy of the creditor whose sole object is to get his

money in the shortest time, with least expense and at the slightest risk. Standing within his legal rights, he permits all the sureties but one to get away, and then his action, according to the contention here, is forever binding on the remaining surety, cutting off resort to his co-sureties for contribution.

Our conclusion harmonizes with other principles. Until he has paid, the surety has no cause of action. How then can he be said to have asserted it in the action on the bond? He had not then paid and had none to assert. If he can be said to have had an equity, a court of law in which he may have been sued, would not recognize that; and in a court of equity it is an incomplete cause of action, and a man is not bound to sue until his cause of action is complete. *Trustees* v. *Siers,* 68 W. Va. 125.

Only two decisions declaring the contrary of the conclusions here stated, have been found, *Cross* v. *Scarboro,* 6 Bax. (Tenn.) 134, and *Hood* v. *Morgan,* 47 W. Va. 817. In neither of them was there any effort in the opinion to apply the principles of *res judicata.* In other words, the principles were not stated nor was there any effort to demonstrate their application. The conclusions are certainly not sustained by the application of those principles. *Hood* v. *Morgan* erroneously assumes that the right of contribution arises by subrogation only, and it is upon that proposition it declares the former judgment in favor of the sureties against the creditor conclusive. The decision in that case may not be wrong. Possibly it can be sustained upon the doctrine of estoppel. As to whether it can or not, it would be useless to enter upon any inquiry now. It suffices to say it makes an erroneous application of the doctrine of *res judicata,* and no element of estoppel appears in this cause.

As the costs paid and expenses incurred in the litigation in the cause of *Taylor* v. *Taylor* by the plaintiff in this bill were the result of its effort, not to refuate liability in general to the distributees of the estate of Taylor, but to be relieved from the liability on the bond, as a result of the execution of the subsequent ones, the court did not err in refusing to enforce contribution against the defendants as to costs and expenses. In the main, the defense was purely personal.

Seeing no error in the decree appealed from, we will affirm it.

*Affirmed.*

WILLIAMS, JUDGE, *(dissenting)*:

I think the decree in *Taylor* v. *Taylor*, sustaining the demurrers of the United States Fidelity and Guaranty Company and the Citizens Trust and Guaranty Company, and dismissing the bill as to them, is an adjudication against the Central Banking and Trust Company of any right to contribution. The principal and all the sureties were there sued, and a decree rendered holding the principal and one surety only liable, and releasing the other two. What is the effect of that final and unreversed decree? In the absence of fraud, or collusion between the obligee and the discharged sureties, is it not conclusive upon the co-sureties as well as upon the creditor? If not, why so? There is a privity of relation and obligation between principal and surety; and it is out of regard to that relation that a judgment against a principal, bound for a collateral undertaking, is conclusive of the amount for which his surety is liable. *Crim* v. *England*, 46 W. Va. 480; *State* v. *Nutter*, 44 W. Va. 385; *Turner* v. *Stewart*, 51 W. Va. 493. No one, I imagine, will question that a judgment recovered *against* a principal and all the sureties, in a subsequent suit for contribution by the surety who paid it, would be conclusive of liability to the creditor. They would be estopped to deny liability. Why? Because the right of contribution rests on liability to the obligee, and that liability was an issue adjudicated by the judgment. Why then is not a judgment of discharge as to some of the sureties, equally conclusive? It will not do to say that a judgment against them has one effect, and a judgment for some of them and against others, on the same issue, has another effect. The judgment must have the same force in either case. The right of contribution is not a primary right; it depends on a common liability to a third person. The sureties must occupy toward the creditor exactly the same attitude. The right to have contribution springs out of a common burden resting on two or more persons occupying the same position in relation to the creditor. 27 A. & E. E. L. 483. Therefore, if a surety

is not liable to the creditor, he is under no obligation to help bear the burden; he is not then liable to his co-surety. A surety who pays a debt for which another surety is not liable can not have contribution. 1 Brandt on Suretyship & Guaranty, sec. 267. "He takes the place of the original creditor, and may be resisted on the same principles, and in the same way." *Lowndes* v. *Pinckney*, 1 Rich. Eq. (S. C.) 155. A surety paying a debt can occupy no better position than the creditor did. 2 Brandt on Suretyship & Guaranty, sec. 316. In a suit for contribution, by a surety who paid the judgment, there is involved the same identical issue that was litigated in the suit by the creditor against the sureties, and that issue, having been determined by a final judgment, is *res judicata*. It matters not that the issue was not joined between co-sureties. It was joined between the creditor on the one side and the principal debtor and sureties on the other, and, in the absence of fraud, it is conclusive on all parties. It is on the ground that a judgment in such case has a conclusive effect, that equity subrogates the surety who pays it to all the rights of the creditor, not only as against the principal debtor but against the other sureties as well. *Hawker* v. *Moore*, 40 W. Va. 49; *Woods* v. *Douglas*, 46 W. Va. 657; *Hess's Estate*, 69 Pa. St. 272; 2 Brandt on Suretyship & Guaranty, sec. 309. What are the rights then of a creditor who has obtained a judgment against principal and sureties? Why, he has a final judgment conclusive upon all of them, which the law makes a lien upon their lands. Now, is it not clear that if, in a suit for contribution, a co-surety could controvert the judgment, the surety who paid it would not be enjoying the rights of the creditor? Says Chief Justice Marshall in *Lidderdale* v. *Robinson*, 2 Brockenbrough (U. S. Cir. Ct.) 155, after reviewing some early Virginia decisions: "The principle which the cases decide is this: Where a person has paid money for which others were responsible, the equitable claim which such payment gives him on those who were so responsible, shall be clothed with the legal garb with which the contract he has discharged was invested, and he shall be substituted, to every equitable intent and purpose, in the place of the creditor whose claim he has discharged. This principle of substitution is completely established in the books,

and being established, it must apply to all persons who are parties to the security, so far as is equitable. The cases suppose the surety to stand in the place of the creditor, as completely as if the instrument had been transferred to him, or to a trustee for his use. Under this supposition, he would be at full liberty to proceed against every person bound by the instrument.

"Two co-sureties were sued jointly, and judgment was rendered in favor of them both. The creditor appealed to the supreme court from the judgment in favor of one of them, and such judgment was as to such surety reversed, and judgment in the supreme court was rendered against such surety for a large amount, which he paid. *Held*, he could not recover contribution from the other surety. The judgment which as to him remained in force in the court below established the fact that he was not liable to the creditor, and consequently not liable for contribution." 1 Brandt on Suretyship & Guaranty, sec. 267. The author cites *Ledoux* v. *Derrive*, 10 La. Ann. 7, which is not in the library. But I have no doubt he correctly states the principle decided.

Mr. Black, a very eminent law writer, in his work on Judgments, sec. 591, says: "Where, in a suit against one of two sureties, judgment is fairly obtained against him, and no collusion existed between him and the party recovering the judgment or the principal obligor of the bond, if notice of the pendency of such suit has been given his co-surety, the latter stands virtually in privity with him against whom the judgment has been obtained. The co-surety in such case is bound to avail himself of any defense which he may have, and he will not be permitted afterwards, in a suit for contribution brought against him by his co-surety who has paid and satisfied the judgment, to set up any defense which he ought to have pleaded in the original suit upon the bond, by becoming a party for that purpose. It was his duty to join in the defense to the action. Having failed to do so, though he had full notice of the pendency of the action, he waives all defenses he might have had, and in the suit for contribution the matter is res judicata." The author here states a proposition even stronger than the one I am contending for, but he is supported by *Love* v. *Gibson*, 2 Fla. 598, and other authorities.

I would give the judgment conclusive effect only in case the sureties were parties to the suit.   The exact principle for which I contend arose, and was decided, in *Hood* v. *Morgan,* 47 W. Va. 817.   But the majority opinion, in effect, overrules that case.   The question was also decided by the supreme court of Tennessee in *Cross* v. *Scarbro,* 6 Baxter 134.   That case is almost identical with the one at bar.   There some of the sureties, as in this case, had executed several obligations. In a suit by the creditor against all of them some were discharged and others held liable.   Those that were held liable paid the debt and sued the others for contribution, and the court held that the former judgment of discharge was an adjudication of their non-liability, and was binding on the co-sureties.   The following cases are also pertinent:   *Preslar* v. *Stallwarth,* 37 Ala. 402; *Hess's Estate,* 69 Pa. St. 272; *Fletcher* v. *Jackson,* 23 Vt. 581, 65 Am. Dec. 98.   In fact, after a very careful examination of the subject, I do not find that any court, except the supreme court of Ohio, holds to the principle decided by the majority opinion.   The cases of *Pomeroy National Bank* v. *Huntington National Bank, Hudson* v. *Land & Mining Co.,* and *Bierne* v. *Ray,* decided by this court and cited in the majority opinion, in my opinion, are not applicable.