## MEMPHIS v. UNITED STATES.

1. Vested rights acquired by a creditor under and by virtue of a statute of a State granting new remedies, or enlarging those which existed when the debt was contracted, are beyond the reach of the legislature, and the repeal of the statute will not affect them.

2. Sect. 49 of the Code of Tennessee, declaratory of the law of that State respecting the effect of repealing statutes, is in accord with this doctrine.

3. On March 16, 1875, A. obtained a decree against Memphis for the payment to him of $292,133.47, for materials furnished and work done under contracts entered into with that city in 1867 for paving certain streets. Execution having been issued, and returned unsatisfied, the court, on the 22d of that month, awarded an alternative writ of *mandamus*, to compel the city to exercise the power conferred by an act of the legislature passed March 18, 1873, and levy "a tax, in addition to all taxes allowed by law," sufficient to pay the decree. The city answered that said act had been repealed by one passed March 20, 1875, and that the tax which, by the act of Feb. 13, 1854, it was authorized to levy for all purposes had been levied, and its powers were therefore exhausted. A. demurred to the answer; the demurrer was sustained, and the writ made peremptory March 30, 1875. The act passed March 20, 1875, was approved by the governor of the State on the twenty-third day of that month. *Held*, 1. That the repealing act did not become a law until its approval by the governor. 2. That prior thereto, A., by his decree and the alternative *mandamus*, which was a proceeding commenced by virtue of the act of March 18, 1873, had acquired a vested right, which was not defeated by the repealing act, to have a tax, payable in lawful money, levied sufficient to pay him, although it required the levy of a tax beyond the rate mentioned in the act of 1854.

ERROR to the Circuit Court of the United States for the Western District of Tennessee.

The facts involved in this case are the same as those in *United States* v. *Memphis, supra,* p. 284.

The city of Memphis, by whom this writ was sued out, assigns the following errors: —

The court below erred —

1. In holding that the city of Memphis had the power or was under the duty of levying the tax, as adjudged.

2. In holding that the legislature had no power to repeal the act of March 18, 1873.

3. In adjudging that the tax to be levied should be payable only in lawful money of the United States, as the act of March 18, 1873, required the city of Memphis to receive, in payment of the tax therein authorized, "any sum or sums, with interest, paid by persons in satisfaction, or part satisfaction, of said special assessments, illegally levied and collected as aforesaid."

4. In holding that a new and further tax be laid, sufficient to pay the entire decree, for $292,133.47, the return to the alternative writ disclosing that under a former mandate of the court the city had made a special levy of $302,742.69, for the purpose of paying the decree; that of said levy $132,742.69 had been collected and paid over, and the remainder, $170,000, was being collected and paid over as rapidly as possible.

5. In awarding the writ of *mandamus* commanding the levy of a tax sufficient in amount, after making due allowances for all delinquencies, insolvencies, and defaults, to pay the decree.

6. In awarding the peremptory writ of *mandamus.*

*Mr. W. Y. C. Humes* and *Mr. S. P. Walker* for the plaintiff in error.

*Mr. William M. Randolph, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

The important question in this case is, whether the law of the State empowered the city of Memphis to levy the tax which by the writ of *mandamus* it was commanded to levy. If it did not, the award of the writ cannot be sustained, for a *mandamus* will not be granted to compel the levy of a tax not authorized by law.

By an act of the legislature passed on the 18th of March, 1873, it was enacted as follows: —

" That where an incorporated town or city has, by virtue of presumed authority to lay special assessments for specific purposes, levied and collected taxes or special assessments, the right to make which levy and assessment was afterwards declared void by the Supreme Court of the State, said town or city shall have the power to levy a tax, in addition to all other taxes allowed by law to be levied, sufficient to cover the entire cost of the improvement, with interest thereon, for which said special assessments were illegally made, and in the levying of such additional tax authority is hereby given to such town or city to allow as valid payments on said additional tax any sum or sums, with interest, paid by persons in satisfaction, or in part satisfaction, of said special assessments, illegally levied and collected as aforesaid."

This statute, it is true, was not in existence when the plaintiff's contract with the city was made, but it is confessedly available for him, unless it was repealed before he acquired any rights under it.  Plainly it was enacted to meet his case, and had there been no repeal, the question now raised would not be before us.  It is claimed, however, that it was repealed before the Circuit Court awarded the *mandamus*, and what was the effect of that legislative action upon the power of the court in this case becomes therefore a very important question.  It is an acknowledged principle that a creditor by contract has a vested right to the remedies for the recovery of the debt which existed at law when the contract was made, and that the legislature of a State cannot take them away without impairing the obligation of the contract, though it may modify them, and even substitute others, if a sufficient remedy be left, or another sufficient one be provided.  The law is in effect a part of the contract.  But it is not so clear that when a new remedy is authorized after a contract has been made, that remedy may not be wholly taken away by the legislature, before any vested rights have been acquired under it.  In such a case the parties did not contract with reference to it, and it did not enter into their agreement.  It had nothing to do with the obligations they assumed.  It is, however, no less true that vested rights may be acquired by the creditor under it and by virtue of it; and when such rights have been acquired, they are beyond the reach of the legislature, and the repeal of the law will not affect

them. As to them the law continues in force, notwithstanding its repeal.

In this case the relator recovered his judgment against the city on the 16th of March, 1875. Into that judgment his contract was merged, and it no longer had any legal existence. If, as asserted by Blackstone, the judgment was itself a contract, the remedies for its enforcement, existing at the time when it was recovered, could not be taken away either by direct legislation, or indirectly, by repealing the law which gave those remedies. And if the judgment may not be considered a contract of record, still the vested rights it gave to the relator, whatever they were, are equally secure against legislative invasion.

After the judgment was obtained an execution was issued to collect the amount of it, and on the 22d of March, 1875, the alternative *mandamus* was issued to compel the levy of the tax of which the city now complains. It was not until after all this that the act of March 18, 1873, was repealed. The act repealing it was approved by the governor on the 23d of March, 1875, and it became a law only from the time of his approval. Such is the generally received doctrine. See cases cited in 4 Abb. Nat. Dig. 223. It is said, however, the rule in Tennessee is different; and it is contended that as the act passed the two Houses on the 20th of March, though not approved by the governor until the 23d, it took effect, by relation, on the day of its passage through the two Houses; and we are referred to *Dyer* v. *States*, Meigs (Tenn.), 237–255, and to *Turner* v. *Oburn*, 2 Coldw. (Tenn.) 460. Those decisions were under the Constitution of 1834, which did not require the approval of the governor, or a passage of the bill over his objection, to make a binding statute as the Constitution of 1870 does. It is true the earlier Constitution required the signature of an act by the respective speakers of the House. That was for the purpose of attestation only, and the act was then said to take effect on the day of its passage. The later Constitution demands the same signatures, and it demands more, namely, the approval of the governor. It also ordains that no bill shall become a law until it shall have received his approval, or shall have been otherwise passed under the provisions of the Constitution; that is, as we under-

stand it, over his refusal to approve. The executive is thus made a necessary constituent of the law-making power. If with this be considered the declaration of the Constitution, that no retrospective law, or law impairing the obligation of contracts, shall be made, the conclusion is inevitable, that the repealing act had no effect upon any thing that was done before March 23, 1875. But before that day we think the relator had acquired a vested right by his judgment and his alternative writ of *mandamus* to have a tax levied sufficient to pay the debt due to him from the city, — a right of which he could be deprived by no subsequent action of the legislature.

We do not deny that it is competent for a legislature to repeal an act which when it was passed was a mere gratuity, if while it was in existence no vested rights have been acquired under it or in virtue of it. But such, we think, is not this case. Indeed, there are very strong reasons for holding that the act of March 18, 1873, never was a gratuity. By the act of 1866 the legislature invited contracts with the city for grading and paving, offering to the contractors the security of assessments upon the owners of property abutting on the improved streets. No doubt it supposed it had the power to give such security or such a remedy to the contractor. No doubt both the city and the contractor thought such a power existed. It turned out that they were all mistaken. The contractor, by this mutual mistake, was led into the expenditure of much labor and money, and the city enjoyed the benefit of the expenditure. The security promised for reimbursement to him having failed, the legislature and the city having held forth unfounded expectations to him, by which he was induced to enter into the contract, there was the highest moral obligation resting alike upon the State and upon the city to provide a substitute for the remedy which had proved to be of no value. This substitute was provided by the act of 1873. It was merely adding a legal to a moral obligation. It should not be considered a mere gratuity. It took the place of a resort to abutting lot-owners, and if the contractor could not have been deprived of that, had it been authorized by the Constitution, the thing substituted for it should, in justice and common honesty, be regarded as equally

secure for his indemnity. But if we are in error in this, it is still enough that by his judgment and his writ of *mandamus* he acquired a vested right to have the tax collected which the writ ordered.

The Code of Tennessee, sect. 49, declaratory of the law of the State respecting the effect of repealing statutes, is as follows : " The repeal of a statute does not affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced under or by virtue of the statute repealed." Thus has been established a rule for the construction of repealing statutes. If now the rule be applied to the act of March 23, 1875, it is manifest that act did not affect any right that had before its passage accrued to Brown, the relator, under or by virtue of it, or any proceeding commenced by him under it. But certainly under his judgment recovered in 1875 he had a right to have a tax levied sufficient to pay it, so long as the act of 1873 remained in force, and he had the right in virtue of that act. So when the alternative *mandamus* was issued, March 22, 1875, a proceeding was commenced under or by virtue of the statute. And if the repealing act affected that proceeding, or took away the right the relator had in force of his judgment, it was retrospective in its operation, and it was therefore prohibited by the Constitution. In *Fisher's Negroes* v. *Dabbs* (6 Yerg. (Tenn.) 119) it was said by the court that " a distinction between the right and the remedy is made and exists. But where the remedy has attached itself to the right, and is being prosecuted by due course of law, to separate between them and take away the remedy is to do violence to the right, and comes within the reason of that provision of our Constitution which prohibits retrospective, or, in other words, retroactive, laws from being passed, or laws impairing the obligation of contracts." *Vide Richardson* v. *The State*, 3 Coldw. (Tenn.) 122.

For these reasons we think that, so far as relates to the case of Brown, the relator, the act of March 18, 1873, remains in force, and that the city of Memphis has power under that act to levy and collect the tax which was directed by the *mandamus*.

The remaining questions in the case are of minor importance. It is said there was error in adjudging that the tax to be levied should be payable only in lawful money of the United States.

We do not perceive in this any error. The judgment of the relator could be paid only with such money; and the tax ordered was to be sufficient in amount, after making due allowances for all delinquencies, insolvencies, and defaults, &c., to realize $125,000 each year for the years 1875, 1876, respectively, and as much of said sum for the remaining year (1877) as may be required to pay and satisfy the balance of the decree in favor of the relator, with interest and costs, not satisfied by former taxes collected and paid. The meaning of the writ is, that sufficient money shall be collected. If the city elect to credit in payment of the levy what the lot-owners have paid, the *mandamus* does not forbid it; but a sufficient levy must be made and collected to raise in money the sums ordered to be paid in satisfaction of the decree in favor of the relator. This was plainly right.

The only other assignment worthy of notice is, that there was error in holding that a new and further tax be laid, sufficient to pay the entire decree for $292,133.47, the return to the alternative writ disclosing that under a former mandate of the court the city of Memphis had made a special levy of $302,742.69, for the purpose of paying the relator's decree; that of said levy $132,742.69 had been collected and paid to the relator, and that the remainder, $170,000, was being collected and paid over as fast as possible.

This assignment is manifestly evasive. The former mandate was not for the satisfaction of the decree of March, 1875. But if it was, it would make no difference. It is the most the city can ask, that it be assumed the former mandate had been obeyed, and that all had been collected that could be collected under the levy. What has not been, therefore, cannot aid in satisfying the decree, and it is not averred that any part of the $170,000 can be. Notwithstanding the *mandamus*, it is in the power of the city to relieve herself from its binding force by paying the debt due the relator. If she can collect any thing by virtue of past levies, to the extent of the collection she will be relieved from levying additional taxes, but the debt must be paid.

*Judgment affirmed.*