ISABEL M. R. DE PARIS, defendant below, plaintiff in error vs.
    WILMINGTON TRUST COMPANY, a corporation of the state
    of Delaware, administrator of Federico Evaristo Schemel,
    deceased, plaintiff below, defendant in error.

1.  GUARANTY—CONTRIBUTION—ENFORCEMENT.
       If a coguarantor pays the whole debt, he may compel the other to pay
    one-half thereof by action at law based on an implied promise.
2.  EXECUTORS AND ADMINISTRATORS—PRIVITY BETWEEN DOMICILIARY
    AND ANCILLIARY ADMINISTRATORS.
       There is no privity between a domiciliary and an ancilliary adminis-
    trator, there being but one estate, and both being in privity with decedent
    and his estate but not with each other.
3.  EXECUTORS AND ADMINISTRATORS—SUIT BY ADMINISTRATOR—FOREIGN
    JUDGMENTS.
       A domiciliary administrator may sue in his own name in another state
    on a judgment recovered by him in his representative capacity in the state
    of the domicile, because the judgment is his property.
4.  EXECUTORS AND ADMINISTRATORS—DOMICILIARY AND ANCILLIARY
    ADMINISTRATORS.
       Where a contract of guaranty was executed in Venezula by two coguar-
    antors, and one of them died after demand for payment and the debt was
    paid by his succession in Venezuela, an ancilliary administrator of his estate
    appointed in Delaware could not enforce contribution from the coguarantor;
    there being no privity of estate between the two administrators.

                        (*September* 5, 1918.)

    CURTIS, Chancellor, PENNEWILL, C. J., and BOYCE, J., sitting.
    *Hugh M. Morris* (of Saulsbury, Morris and Rodney) for
plaintiff in error.
    *Ward, Gray and Neary* for defendant in error.
    Supreme Court, June Term, 1918.

    ERROR TO THE SUPERIOR COURT, New Castle County, No. 4,
June Term, 1918.
    Foreign attachment by the Wilmington Trust Company,
administrator against Isabel M. R. de Paris, under which defend-
ant's shares of stock in a Delaware corporation were seized. The
defendant appeared by giving security, thereby dissolving the
attachment. The case was pleaded to issue. Trial by jury.
Verdict for the plaintiff. Judgment entered. Defendant brings
error. Judgment reversed. S. c. on demurrer 5 *Boyce* 565, 96
*Atl.* 30.

30 Del.]     DE PARIS vs. WIL. TRUST CO.          179

Statement of Case Below.

The declaration consisted of the common counts and there-after from time to time three amendments, each consisting of additional counts. The defendant demurred generally to the counts of one of the amendments. The demurrer was overruled (5 *Boyce*, 565, 96 *Atl.* 30), Judges RICE and HEISEL sitting below, and before whom the case subsequently came on for trial. When plaintiff at the trial rested, counsel for defendant moved for a non-suit, for the following reasons:

That the testimony and the documentary evidence in this case show that the contracts were made in Venezuela, that the contracts were under Venezuelan law, that the payment, if made, by the succession of Schemel, was paid by his Venezuelan succession; that the dictionary in evidence shows that succession intestate means heirs-at-law; that we have from the testimony of Doctor Rivas that the receipt paid by the succession means paid by the heirs-at-law, so that we have a payment made by the heirs-at-law in Venezuela or by the succession; that no devolution of title from the persons in Venezuela has been shown passing from them to this plaintiff; that the documentary evidence shows that this payment was made on September, 1912, and that letters of administration were not granted to the Wilmington Trust Company until a year or more thereafter; that the evidence shows that the payment was not made by the Wilmington Trust Company; that the testimony shows title in the Venezuelan heirs-at-law of the Venezuelan succession; that there is no privity between administrators in Venezuela and the Wilmington Trust Company, administrator, the plaintiff in this case; citing *Story on Conflict of Laws*, 518; *Davis v. Heralds of Liberty*, 39 *Pa. Co. Ct. R.* 399; *Johnson v. Powers*, 139 *U.S.* 156, 11 *Sup. Ct.* 525, 53, 35 *L. Ed.* 112; 8 *A. & E. Ency. of Law* (*1st Ed.*) 427; *Eng. Com. Law Reps.* vols. 1–8, *p.* 15; 19 *A. & E. Ency. of Law* (*1st Ed.*) 156; *Stacy v. Thrasher*, 6 *How.* 44, 58, 12 *L. Ed.* 337; *McCord v. Thompson*, 92 *Ind.* 565; 18 *Cyc.* 1229–1237, 874, 878; *Giddings v. Green* (*C. C.*) 48 *Fed.* 489; *Hare v. O'Brien*, 233 *Pa.* 330, 82 *Atl.* 475, 39 *L. R. A.* (*N. S.*) 430, *Ann. Cas.* 1913B, 624; *Talmage v. Chapel*, 16 *Mass.* 71;that there is no identity of parties, and the burden of showing privity

of parties is upon the plaintiff. The motion for a non-suit was also based on defendant's plea No. 2, being the first special plea, on the points which were disposed of on the demurrer, reported in 5 *Boyce*, 565, 96 *Atl.* 30.

The motion was refused, HEISEL, J., delivering the following opinion:

The testimony introduced by the plaintiff shows that during the year 1911, Joseph J. Paris, son of the defendant, was the maker of several instruments of writing in the nature of promissory notes and an account current wherein he obligated himself to pay to certain banks in Maracaibo, Venezuela, the several sums of money mentioned in said instruments of writing.

At the same time the plaintiff's intestate Federico Evaristo Schemel, and the defendant, Isabel M. R. de Paris guaranteed the payment of the sums of money mentioned in the said several instruments of writing in the following language, or language to the same effect:

"The undersigned bind themselves jointly with the grantor to the fulfillment of this obligation under the same terms and conditions above stipulated. Dated as above."

That under such guaranty and the law of Venezuela, Schemel and Mrs. De Paris, as such joint guarantors, were each liable for the total unpaid balance of each of said unstruments of writing so guaranteed by them; but should either of them be obliged to pay any sum by reason of such guaranty, the other would be liable to the one so paying for one-half of the amount so paid, with interest from the time of such payment.

Said notes and account current being overdue and unpaid by the said Joseph J. Paris, the holders thereof on the sixth of July, 1912, duly and properly notified Schemel to that effect, and demanded that he pay the several amounts due under his contract of guaranty with Mrs. De Paris thereon.

Schemel died intestate on the fifteenth of the same July without having made any payment on said notes or account current, but on the fifth of September following, the estate, or represent-

atives of the estate of Schemel paid to the holders of said notes and account current the sum of 72,426.58 bolivars in money of the United States of Venezuela.

That under the Laws of Venezuela, upon the death of a person intestate no administrator is appointed to administer the estate as is provided under our law, but the estate is represented by those heirs of the intestate who elect to take the inheritance, and administered by them collectively until all the debts of the estate are paid and the estate divided amongst them.

That all the parties heretofore mentioned resided in the United States of Venezuela and the transactions described took place in that country.

That letters of administration on said Schemel's estate were granted to the Wilmington Trust Company in this state, September eleventh, 1913.

Upon this evidence counsel for defendant moves for a nonsuit on two grounds:

First:   For reasons fully set out by defendant in her second plea, being the first special plea, to the declaration, and which is briefly, that all the parties to the notes and account current sued upon, being residents of Venezuela and the debts in question contracted in that country, they constitute no portion of Schemel's estate, rights or credits within the State of Delaware, and therefore the Wilmington Trust Company, as administrator in this State, acquired no claim, right, title or interest in said notes 'and account current, and had no right to maintain this action. This same question was decided by this Court at an earlier stage of this case upon demurrer and there determined contrary to defendant's contention, so without repeating here the reasons stated there, we decline to grant the motion on this first ground.

Defendant's second ground for his motion is that the representatives of Schemel's estate in Venezuela are the only parties who can properly maintain this action for the reason that the cause of action resulted from, or arose out of, something done by them, after the death of Schemel, and not because of anything done, or contract entered into, by Schemel during his lifetime.

In other words that no action could be brought by Schemel's estate anywhere against this defendant for contribution under the contract of guaranty, until some amount of money had been paid by Schemel in his lifetime or by representatives of his estate after his death.

That the evidence shows no payment by Schemel in his lifetime, but does show payments by representatives of his estate in Venezuela after his death; therefore such representatives only could maintain the action, because the cause of action accrued by reason of the payment of money by them, which conferred upon them, or fixed in them, the exclusive right to maintain the action, either in their representative capacity or personally; and there being no privity between representatives of estates in different states or countries, the right to maintain this action could not pass from them to the plaintiff, the administrator of Schemel in this state. Citing among others the following authorities: *Story on Conflict of Laws* 518, 522; 8 *A. & E. Ency. of Laws*, 427; 19 *A. & E. Ency of Law*, 156 *Stacy v. Thrasher*, 6 *How.* 44, 58, 12 *L. Ed.* 337; 18 *Cyc.* 874, 878; *McCord v. Thompson*, 92 *Ind.* 565; *Talmage v. Chapel*, 16 *Mass.* 71.

These authorities as we view the evidence in this case do not touch the point. It is not a question of privity between administrators of an estate in different jurisdictions, or what authority if any, one administrator may acquire by reason of some act of another administrator in a foreign jurisdiction, but the question is the right of an administrator to enforce the provisions of a contract made by his intestate.

When Schemel and Mrs. Paris signed the obligations in evidence, as joint guarantors, they agreed that should the maker of those obligations not satisfy them according to their provisions, the guarantors would; and they further agreed, under the provisions of the law of Venezuela, that should either be obliged to pay all or any part of said obligations, the other or his heirs or representatives, would repay to the one so paying, one-half the amount paid, with interest from the date of such payment.

That, we think, was the cause of action as between Schemel or his estate and Mrs. Paris.

True the right of Schemel or his estate to bring an action against the defendant was not complete until Schemel or his estate had paid out some amount as a consequence of his joint guarantyship with defendant. His obligation to pay, however, was complete before his death, because the maker of the notes and account guaranteed had failed to pay, and demand had been made upon Schemel; so that the representatives of his estate in Venezuela in discharging this obligation, did nothing more than carry out the provisions of the contract made by Schemel with the defendant. This we think could have no other effect upon the right of his administrator in this jurisdiction to maintain an action upon such contracts, than if Schemel had paid it himself.

Whereupon the following was stated upon the record:

*Mr. Morris:*—I understand it is admitted by Mr. Gray that the Wilmington Trust Company did not make payment of these obligations and account current to the payees or obligees of those promissory notes or account current.

*Mr. Gray:*—Yes, they did not actually make any payments.

*Mr. Morris:*—Is it also admitted that Isabel M. R. de Paris was a resident and domiciled in Venezuela at the time of the death of Federico Evaristo Schemel, and has been there resident and domiciled at all times since?

*Mr. Gray:*—Yes.

When both sides had rested, Mr. Gray asked the Court to charge the jury that the amount of liability of the defendant in this case, if the jury should find a verdict for the plaintiff, is, in American dollars, eight thousand one hundred and ninety-seven dollars and sixty-nine cents, figured at the rate of exchange of 5.10 bolivars equal to one dollar, with interest at three per cent. per annum.

Mr. Morris requested the court to instruct the jury to return a verdict for the defendant.

Because:

(a) The evidence discloses that the obligations of Joseph J. Paris for which the said Federico Evaristo Schemel and the said defendant were surety were made and payable in the Republic of the United States of Venezuela and not in the State of Delaware.

(b)  All the parties to each of the said obligations including the sureties were residents of the said Republic of the United States of Venezuela.

(c)  The evidence discloses that the said obligations were paid by the heirs-at-law of the said Federico Evaristo Schemel about the third, fourth and fifth days of September, 1912, and that thereupon and thereby the title to the said supposed causes or rights of action became vested exclusively in the said heirs-at-law in the United States of Venezuela and that letters of administration upon the goods and chattels, rights and credits of the said Federico Evaristo Schemel within the State of Delaware were not granted to the plaintiff herein until more than a year thereafter.

(d)  The declaration and evidence disclose that the title to the alleged causes or rights of action is not in the plaintiff.

(e)  The declaration and evidence disclose that the title to the alleged causes or rights of action is in the heirs-at-law of the said Federico Evaristo Schemel in the Republic of the United States of Venezuela.

(f)  There is no privity between the heirs-at-law of the said Federico Evaristo Schemel in the Republic of Venezuela and the plaintiff as administrator of the goods and chattels, rights and credits of the said Federico Evaristo Schemel in the Republic of Venezuela and the plaintiff as administrator of the goods and chattels, rights and credits of the said Federico Evaristo Schemel in the State of Delaware, and particularly as to the supposed causes or rights of action sued upon in this case.

(g)  The record and evidence disclose that the situs of the debts sued for is not in the State of Delaware.

(h)  The record and evidence disclose that the situs of the alleged debts sued for was at the time said supposed causes or rights of action arose, and at all times since has been, in the Republic of the United States of Venezuela.

(i)  The record and evidence disclose that the said supposed debts sued for are not assets of the estate of the said Federico Evaristo Schemel within the State of Delaware.

HEISEL, J., charging the Jury:

On the fifth day of January, 1914, upon proper affidavit filed by the plaintiff, The Wilmington Trust Company, as administrator of Federico Evaristo Schemel, a writ of foreign attachment was issued out of this court against the defendant, Isabel M. R. de Paris; upon which writ shares of stock of a certain corporation of this state, the property of the defendant, were duly attached.

The plaintiff claims and has adduced evidence in support of such claims that during the year 1911, in the United States of Venezuela, the plaintiff's intestate, that is, Schemel, and the defendant, Mrs. Paris both of whom were residents of Venezuela, were joint guarantors on certain obligations of the son of Mrs. Paris, one Joseph J. Paris, to two banks in Maracaibo, Venezuela, that Joseph J. Paris, having failed to make payments as required by these obligations, the representatives of the estate of Schemel in Venezuela were obliged to pay and did pay by reason thereof on the fourth of September, 1912, the sum of 72, 426.58 bolivars in Venezuelan money, that under the laws of Venezuela the defendant, Mrs. Paris, being a joint guarantor was liable to contribute, or pay back to the estate of Schemel one-half of said sum of 72,426.58 bolivars, with interest thereon from the said fourth day of September, 1912, at the rate of three per centum per annum to the date of your verdict.

Defendant's counsel has offered no evidence to refute these contentions made by the plaintiff, but contends that the court should instruct you to render a verdict in favor of the defendant for the various reasons set forth in their prayers, which we deem unnecessary to state to you in detail. We decline to so instruct you, and we think it would be of no assistance to you in the performance of your duty in this case for us to inform you of our reasons for so doing.

We do not say to you, gentlemen, that it is necessary for the plaintiff to prove, first, that it is the administrator of Federico Evaristo Schemel; second, that Schemel's estate or representatives of his estate in Venezuela by reason of Schemel being a joint guarantor with the defendant upon the notes and current account

in evidence, under the law in Venezuela, was or were obliged to pay, and did in fact pay, the sums of money claimed; third, that under the law of Venezuela one of two joint guarantors can recover from the other half the amount paid by one, in the satisfaction of such guaranty, with interest thereon from the date of such payment, at such rate as is provided by the law of Venezuela.

If these things are proven to your satisfaction, you should find a verdict in favor of the plaintiff, and for such amount as is shown by the evidence to be one-half of the amount paid by the Schemel estate under the conditions before stated, with interest thereon from the date of such payment, at such rate of interest as is shown by the evidence to be in accordance with the laws of Venezuela.

Otherwise you should find for the defendant.

If you find for the plaintiff, the amount of your verdict should be stated in the money of the United States of America. In converting the amount of said verdict from the money of the United States of Venezuela to money of the United States of America, you should use the present rate of exchange between those two countries as shown by the evidence.

Verdict for plaintiff.

Judgment being entered, the defendant took a bill of exceptions, and sued out a writ of error, argued in the Supreme Court before CURTIS, Chancellor, PENNEWILL, Chief Justice, and BOYCE, Associate Judge.

The case is in this court on a writ of error to a judgment entered in a suit in the Superior Court for New Castle County. The action was a foreign attachment case, under which shares of stock of a Delaware corporation owned by the defendant were attached and special bail was afterwards given by the defendant, and she appeared. From the declaration it appeared that in 1911 Joseph J. de Paris made in Venezuela three promissory notes and an account current (which was also an evidence of indebtedness), and these were held by certain banks there. Federico Evaristo Schemel and the defendant below, Isabel M. R. de Paris, bound themselves in writing jointly with the maker of the notes

to the fulfillment of the obligations, i. e., to the payment of the notes and account current. The obligations fell due in the lifetime of Schemel, and the principal debtor having made default in the payment thereof, demand was made upon Schemel to pay them. But no payment was made by him. On July fifteenth, 1912, Schemel died intestate in Venezuela, leaving a widow and several children, as his heirs. It was alleged in the declaration that as such heirs the widow and children became "the legally constituted administrators and representatives of the said Federico Evaristo Schemel, deceased, in and for the jurisdiction of the Republic of the United States of Venezuela," and that under the laws of the Republic in the event of the death of a person intestate, the heirs to the extent to which they have assumed jurisdiction of the estate of the decedent stand in the place of the deceased, and succeed as such heirs to all the legal and equitable rights which the deceased may have enforced if he were alive and to all the liabilities for which the deceased would have been liable if he were alive. The notes and account current were not paid at maturity, but were paid by the heirs of Schemel in September, 1912, after his death.

By the Code of Venezuela:

"When many persons have given bond for the same debtor, for one same debt, the bondsman who has paid the debt has action against the other bondsmen for their respective parts." (See article 1811 of Venezuela Code of 1904.)

On September twelfth, 1913, the Wilmington Trust Company, a corporation of Delaware, was appointed administrator of Schemel, and claims that the defendant, the co-surety with Schemel, pay one-half of the money paid by the heirs of Schemel.

In addition to non assumpsit, the defendant filed two special pleas: (1) A special plea alleging that the situs of the chose in action is without the State of Delaware; that the chose in action did not constitute a part of the estate, rights or credits of the decedent within the State of Delaware, and that the plaintiff did not by virtue of its letters of administration acquire any claim, right, title or interest in or to the said chose in action. (2) That

under the laws of Venezuela the payment of said obligations by the widow and children of the decedent in Venezuela was a payment by them in their individual and personal capacity and not as administrators of the decedent; that any right of contribution accruing to them under the Venezuelan laws was as a result of such payment accrued to them in their personal capacity and not as administrators and that title to the choses in action is not in the plaintiff.

At the trial, in addition to proof of the facts alleged as above, it appeared that all the parties were residents of Venezuela; and that the obligations were paid after Schemel's death by his heirs, and a demand made on behalf of the heirs on the defendant below for contribution, but that she had failed to contribute and pay her part of the debts. There was testimony to the effect that the heirs of Schemel paid the principal debt as administrator of Schemel's estate, and as heirs they were administrators. A motion for a nonsuit was refused. The defendant later moved that the jury be instructed to find a verdict for the defendant on the grounds, (1) that the debt sued for was not an asset of the estate of the decedent within the State of Delaware; and (2) that the declaration and evidence disclosed no title in the plaintiff to the causes of action. This motion was refused, the court taking the position that it was not a question of privity between administration of an estate in different jurisdictions, but as to the right of an administrator to enforce a contract made by his intestate, and as the obligation of Schemel to pay the debt was complete in his lifetime, his Delaware administrator had as much right to bring the suit here on the contract as though Schemel had in his lifetime paid the debt, his Venezuela representatives by paying the debt having done nothing more than carry out the contract made by Schemel.

There was a verdict for the plaintiff for the amount claimed, and judgment was entered thereon notwithstanding a motion in arrest of judgment based on substantially the same grounds as the prior motions. A writ of error was sued out.

There are six assignments of error. The first assignment is that the court erred in refusing to instruct the jury to return a verdict for the defendant. The other assignments are that the court erred in sustaining objections made by the plaintiff to questions asked by the defendant in the examination of Julian A. Arroyo, a witness called by the defendant as an expert to testify as to the law of Venezuela. On his voir dire the witness had stated that though not counsel of record. in the action, he had been acting as co-counsel with Mr. Morris, the attorney of record. The court ruled that counsel in the case should not be allowed to construe the laws of Venezuela, because the testimony was the basis for a resistance of the right of the plaintiff to recover.

CURTIS, Chancellor, after stating the facts, delivered the opinion of the court:

In brief, there were two guarantors of a debt, both residents in Venezuela, and after notice of the default of the principal debtor had been received by one of the guarantors he died in Venezuela with assets there. His personal representatives there, viz.: his widow and children, who as his heirs became administrators by the laws of Venezuela without appointment, paid the whole of the debt. Later the plaintiff below was appointed administrator in Delaware, and brought suit in Delaware against the other co-guarantor for contribution by attachment of property of the defendant in Delaware.

[1] The law of contribution as between two co-guarantors is well settled. If one pays the whole of the principal debt he may compel the other to pay one-half thereof. This is also the law of Venezuela. See *article* 1811 *of Code of* 1904. It is an equitable principle based on natural justice (*Eliason v. Eliason*, 3 *Del. Ch.* 260, 263), and was originally enforcible in equity only, but is now enforcible at law, the duty of one guarantor to reimburse his co-guarantor being the bais of an implied promise to do so. This promise is considered as made when the liability is assumed. *Miller v. Stout*, 5 *Del. Ch.* 259. In the same case Chancellor Saulsbury stated the further well established and undisputed rule, recognized by the court below, that the right to sue on the promise

did not arise until the co-surety had paid the whole of the principal debt, or more than his share thereof.

A court of equity will under special circumstances protect the rights of one guarantor against his co-guarantor before payment of the debt. But this is usually done to prevent the consequences of fraudulent conduct of such co-guarantor. It does not tend to show that there is a right of action at law for contribution until payment of the principal debt.

The death of one co-surety does not affect the right to demand contribution; but the right may be enforced against the estate of a co-surety by the surety who has paid the debt. Conversely, where an executor of a deceased surety pays the debt, he may enforce contribution against the co-surety. *27 Am. and Eng. Enc. of Law*, 484. When an administrator of a surety pays the principal debt, he may maintain an action in his own name against the principal debtor for repayment, and the amount recovered by him will be assets in his hands. In the case of *Mowry v. Adams*, 14 *Mass.* 327, the plaintiff was administrator of B., who was surety for A., the defendant, and after the death of B., paid the debt, brought suit in his own name and not as administrator of B. against A., the principal. The court said that the right to so sue depended on whether A., the defendant, was indebted to the plaintiff, or to the estate of B., and that this depended on the time and manner of his becoming liable. And further, that as B. had no right of action until he had paid the debt of the principal, and as he, B., died without paying, there was no promise by the defendant to him.

"His (B.'s) estate was, however, liable, and the administrator, if called upon was obliged to pay. The debt of A. accrued when M. (the plaintiff) paid the money; an implied promise then arising to repay, it being, in fact the debt of A. for which M. (B.) was surety, and which was paid by M. to the use of A. But the promise could not accrue to B., he being dead. It was, therefore, a promise to the administrator. Now, it is settled that when a contract is made with an executor or administrator personally, after the death of the testator or intestate, or where money is received by the person sued after the death, in such cases the executor or administrator may sue either in his own name, or as executor or administrator. By suing in his own name, he becomes answerable to the estate for the amount recovered, and it is an implied acknowledgment of assets to the amount in his hands. The present is a case of that sort. The plaintiff takes money of the estate to pay

a debt, for which the estate is answerable; he sues the principal debtor in his own name; he is chargeable with the amount of the debt as assets; and he may recover the amount   *   *   *   in his own name."

This case was cited in *Cobb v. Wood,* 8 *Cush.* (62 *Mass.*) 228; *Williams v. Moore,* 9 *Pick.* (26 *Mass.*) 432; *Moore v. Petty,* 135 *Fed.* 668, 68 *C. C. A.* 306.

The general principle was thus stated in *Moore v. Petty, supra,* though it should be noted that the suit in a foreign jurisdiction was by a domiciliary executor to recover proceeds of sale of property of the decedent received by the defendant who had made the sale as agent for the domiciliary administrator.

The fact that the principal debtor in this case had made default in paying his debt did not of itself cause a loss to either of those who had guaranteed payment of the debt, or give either a right of action against the other for contribution, for the principal debt might still be paid by the principal debtor, or be released, compromised, or abated as between the principal debtor and principal creditor. A notice to the guarantors of such default did no more damage to the guarantors, and gave no right of action for contribution. Thereafter either of the guarantors could pay the debt without waiting to be sued, and could then have recourse against the other. But until that payment be made there was no cause of action. No cause of action rose merely because of the relationship of the co-guarantors. It follows, then, that Schemel never had a cause of action against the defendant. If he had in his life no right to compel contribution, then his administrator could not acquire from him a right to sue therefor.

The court below erroneously considered that by the contract of guaranty there was a cause of action as between Schemel "or his estate," and Mrs. De Paris, the other guarantor. In other words, the court considered that there could be a cause of action without a right of action. But clearly that is impossible.

[2] If the widow and heirs of Schemel paid as heirs, then clearly the Delaware administrator had no right to sue. If they paid as administrators of Schemel, then the Delaware administrator cannot have the right to sue for contribution, unless there be privity between the Venezuela domiciliary administrators and

the ancillary Delaware administrator. It is settled however, that there is no privity between a domiciliary and an ancillary administrator. There is but one estate, and both are in privity with the decedent and his estate, but not with each other in law or in estate. *Stacy v. Thrasher*, 6 *How.* 44, 12 *L. Ed.* 337; *Johnson v. Powers*, 139 *U. S.* 156, 11 *Sup. Ct.* 525, 35 *L. Ed.* 112; *Hare v. O'Brien*, 233 *Pa.* 330, 336, 82 *Atl.* 475, 39 *L. R. A.* (*N. S.*) 430, *Ann. Cas.* 1913B, 624; *Merrill v. New England, etc., Co.*, 103 *Mass.* 245, 4 *Am. Rep.* 548; *Equitable, etc. Co. v. Vogel*, 76 *Ala.* 441, 52 *Am. St. Rep.* 344. If the legal title to a demand, or the possession of evidence of it, be in the domiciliary administrator, the ancillary administrator cannot sue thereon. *Merrill v. New England, etc., Co.*, 103 *Mass.* 248, 4 *Am. Rep.* 548; *Insurance Co. v. Lewis*, 97 *U. S.* 682, 24 *L. Ed.* 1114.

When a decedent has assets in more than one jurisdiction, there is unity of estate without unity of administration. But the estate of a decedent is not an equity, corporate or otherwise. *Stacy v. Thrasher*, 6 *How.* 44, 12 *L. Ed.* 337; *Anderson v. Louisville, etc., Co.*, 210 *Fed.* 689, 127 *C. C. A.* 277; *Davis v. Heralds of Liberty*, 39 *Pa. Co. Ct. R.* 399; *McGarvey v. Darnall*, 134 *Ill.* 367, 25 *N. E.* 1005, 10 *L. R. A.* (*N. S.*) 861; *Equitable Life, etc., Co., v. Vogel*, 76 *Ala.* 441, 52 *Am. St. Rep.* 344. This is a logical deduction from the principle of the lack of privity between an ancillary and domiciliary administrator. In *Stacy v. Thrasher, supra*, a leading case on the subject, a judgment had been recovered against the administrator of Lee in Mississippi, the domicile of the decedent, and was assigned to Thrasher. Later letters were granted in Louisiana to Stacy on the estate of Lee, and Thrasher sought to enforce in the United States Circuit Court in Louisiana payment of the judgment debt of which he was assignee by suit against the administrator of Lee in Louisiana. The court denied him the right to recover in that way. A judgment against one administrator in one jurisdiction furnished no right of action thereon against another person appointed administrator of the same decedent in another jurisdiction, because there was no privity between them, for that denotes mutual succession or relationship to the same rights of property. The Supreme Court said:

"It is for those who assert this privity to show wherein it lies, and the argument * * * seems to be this: That the judgment against the administrator is against the estate of the intestate, and that his estate, wheresoever situated, is liable to pay his debts; therefore the plaintiff, having once established his claim against the estate by the judgment of a court, should not be called on to make proof of it again. This argument assumes that the judgment is *in rem*, and not *in personam*, or that the estate has a sort of corporate entity and unity. But this is not true, either in fact or in legal construction."

This language was quoted with approval in *Johnson v. Powers*, 139 *U. S.* 156, 11 *Sup. Ct.* 525, 35 *L. Ed.* 112, and the court said that a judgment against an administrator in one estate is *res inter alois acta* as an administrator of the same decedent in another state, "and cannot be even *prima facie* evidence of a debt."

A further illustration of the effect of the lack of privity between administrators of the same decedent appointed in different jurisdictions is the rule that an ancillary administrator cannot maintain suit on a judgment recovered in the domicile of the decedent by the domiciliary administrator for a debt due the decedent. This was so decided in *Davis v. Heralds of Liberty*, 39 *Pa. Co. Ct. R.* 399, citing *Talmage v. Chapel*, 16 *Mass.* 71; 1 *Freeman on Judgments*, 163. The Philadelphia court based its view on the lack of privity and upon the fact that the domiciliary administrator could have sued in Pennsylvania on the judgment obtained by him as administrator in the domiciliary jurisdiction, and therefore that the ancillary administrator could not also sue, saying:

"If the foreign administrator has the right to sue here, how can the local administrator have the same right? The defendant cannot be required to answer the demands of two administrators accountable as they are to different jurisdictions."

There was, therefore, no cause of action for contribution vested in the estate of Schemel as an entity represented by two independent agents with no privity between them; but there was a right of action given to whichever agent paid the decedent's debt. If the ancillary administrator was not in privity with the domiciliary administrator, the former could not enforce a right of action which the latter had acquired because of something done by him. This conclusion is inevitable from the premises.

Counsel for the defendant in error urged that injustice would be done to the estate of Schemel if the defendant in error be denied a right to maintain its present action in the Court below. But there is, or was, clearly a way to enforce contribution from the plaintiff in error. The heirs of Schemel have had an action in Delaware for contribution for moneys paid by them as such. It is probably true that as administrator of Schemel they would also have had such right of action, though it is not in this case necessary to decide a point not argued. Certain it is that a judgment against the defaulting co-guarantor recovered in Venezuela, or elsewhere, by the widow and heirs of Schemel as individuals, or by them as administrators according to the law of Venezuela, would be enforcible here by attachment of property of the plaintiff in error. A domiciliary administrator may sue in his own name in another State on a judgment recovered by hm in his representative capacity in the state of the domicile, because the judgment is his property. *Hare v. O'Brien*, 233 *Pa.* 330, 334, 82 *Atl.* 475, 39 *L. R. A.* (*N. S.*) 430, *Ann. Cas.* 1913*B*, 624, citing 1 *Freeman on Judgments* (*4th Ed.*) 217; 2 *Wharton, Conflict of Laws* (*3d Ed.*) 615½; 18 *Cyc.* 1239, and cases cited there; *Alley v. Caspari*, 80 *Me.* 234, 14 *Atl.* 12, 6 *Am. St. Rep.* 178; *Fisher v. Fielding*, 67 *Conn.* 91, 34 *Atl.* 714, 32 *L. R. A.* 236, 52 *Am. St. Rep.* 270; *Mowry v. Chase*, 100 *Mass.* 79.

[4] The court, therefore, are all of the opinion that the plaintiff had no right of action, because the right to enforce contribution was not due to Schemel in his life, and the payment of the principal debt having been made by the widow and children of Schemel, they could enforce payment either in their own names, or as administrators of Schemel; and further, that this excluded a right of action to the plaintiff, who was not in privity with them and obtained no right of action from or through them.

In view of the foregoing conclusion, it is not necessary in this case to decide whether the court below erred in excluding the testimony of Arroyo, who as counsel for the defendant, though not so of record, was not allowed to testify as to the law of Venezuela.

The court below having erred in refusing to instruct the jury to return a verdict for the defendant below, being the first assignment of error, when as hereinabove, indicated it should have done so because the plaintiff below had no right to the action, the judgment of the court below should be reversed, and a mandate awarded to the court below to enter in the cause a judgment for the defendant below, with costs in this court and the court below upon the plaintiff below.