PENNSYLVANIA GREYHOUND LINES, INC., A CORPORA-
TION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
IRVING ROSENTHAL, DEFENDANT-APPELLANT.

Argued October 5, 1953—Decided January 11, 1954.

374

376

*Mr. Samuel A. Larner* argued the cause for appellant (*Messrs. Budd and Larner*, attorneys).

*Mr. Merritt Lane, Jr.*, argued the cause for respondent (*Mr. Augustus C. Studer, Jr.*, of counsel; *Messrs. McCarter, English & Studer*, attorneys).

The opinion of the court was delivered by

HEHER, J. The action is for contribution under the Joint Tortfeasors Contribution Law of 1952. *L. 1952, c. 335, p. 1075, N. J. S. 2A:53A–1 et seq.*

These are the circumstances: On October 22, 1950 Wynne Goldstein suffered personal injury as the result of a collision of an automobile operated by the defendant Irving Rosenthal and a motor bus of the plaintiff Pennsylvania Greyhound Lines, Inc. She was an occupant of Rosenthal's automobile, at his invitation. On May 22, 1951 she brought suit in the Superior Court against Rosenthal and the owners of the automobile and Greyhound and one Miller, the operator of its bus; and there was a verdict of $21,000 against Rosenthal, Greyhound and Miller, and judgment thereon March 26, 1952. There was judgment at the trial dismissing the owners of the Rosenthal vehicle; and they dropped out of the case. Greyhound and Miller appealed to the Appellate Division, and on April 9, 1952 posted a surety bond of $23,000, conditioned for the payment of the judgment and costs should the appeal be dismissed or the judgment affirmed. The bond made provision for its enforcement against the principal and surety by a motion served on the clerk of the court. The judgment was affirmed by the Appellate Division; and thereafter, on December 19, 1952, Greyhound and Miller paid the judgment and costs to the plaintiff Goldstein, and a warrant of satisfaction was entered reciting that payment was received from Greyhound and Miller only.

On June 18, 1952, pending the appeal, and after the filing of the *supersedeas* bond, the cited Joint Tortfeasors Contribution Law was enacted; and on January 14, 1953 this action for contribution under that law was begun. On February 1, 1953 the judgment plaintiff Goldstein and the defendant Rosenthal were married, and the marriage still subsists. Rosenthal answered that the Contribution Law could not be constitutionally read as operative retroactively to include this case, and by reason of his marriage to the judgment plaintiff, he "is not a 'joint tortfeasor' " within

the intendment of the Contribution Law, and so is not subject to this action for contribution.

There were counter-motions for summary judgment. Defendant's motion was denied; his defenses were stricken, and there was summary judgment for plaintiff on June 12, 1953. Defendant thereupon appealed, pursuant to leave granted by the Appellate Division under *Rule* 4:2–2(*b*), now *R. R.* 2:2–3(*b*), and the appeal was certified here on our own motion.

I.

These basic points are made *in limine*: (a) the Contribution Law "does not apply retroactively to judgments entered prior to its adoption"; and (b) a "retroactive application" of the act would destroy a "vested right" secured to defendant under Article I, paragraph 1 of the State Constitution of 1947 and the Fourteenth Amendment to the Federal Constitution.

More specifically, it is said that the statute gives rise to a "substantive" right not known to the common law, and since the plaintiff herein had no right of action against the defendant Rosenthal "as of the time of the accident, as of the time of the trial, as of the time of the judgment, and as of the time of the filing of the *supersedeas* bond," the defendant "was guaranteed a right of repose in connection with any claim or potential claim for contribution by the plaintiff" and "this freedom from liability, although negative in nature," is "a vested right under existing law" which is proof against retroactive legislative interference under the cited constitutional limitations.

The case of *State by Parsons v. Standard Oil Co.*, 5 *N. J.* 281 (1950), is invoked for the thesis that, in respect of the plaintiff in this action, "the defendant had a fully vested right to be free from any claim for contribution," and if the act be given retrospective application "it removes this vested right and is unconstitutional."

The act *ex vi termini* embraces antecedent joint tortious acts or omissions, but it does not for that reason

transgress the cited constitutional security of vested rights. It is in essence a remedial measure, and legislative acts affecting remedies or modes of procedure not in derogation of vested rights are not retrospective in the vicious sense. *Morin v. Becker*, 6 *N. J.* 457 (1951); *State by Parsons v. Standard Oil Co.*, cited *supra; Citizens Gas Light Co. v. Alden*, 44 *N. J. L.* 648 (*E. & A.* 1882); *Moore v. State*, 43 *N. J. L.* 203 (*E. & A.* 1881); *Sturges v. Carter*, 114 *U. S.* 511, 5 *S. Ct.* 1014, 29 *L. Ed.* 240 (1885); *Hallowell v. Commons*, 239 *U. S.* 506, 36 *S. Ct.* 202, 60 *L. Ed.* 409 (1916); *Standard Accident Insurance Co. v. Miller*, 170 *F. 2d* 495 (*C. C. A.* 7 1948); *Nelson v. Westland Oil Co.*, 181 *F. 2d* 371 (*C. C. A.* 8 1950); *Home Loan Bank v. Mallonee*, 196 *F. 2d* 336, 382 (*C. C. A.* 9 1952).

The general rule is that statutes are to be deemed operative *in futuro* only; but, absent a clear indication of a legislative intent *contra,* a remedial and procedural statute is ordinarily applicable "to procedural steps in pending actions," and is given retrospective effect "insofar as the statute provides a change in the form of remedy or provides a new remedy for an existing wrong. * * * Changes of procedure—*i. e.* of the form of remedies—are said to constitute an exception, but that exception does not reach a case where before the statute there was no remedy whatever." *Shielcrawt v. Moffett*, 294 *N. Y.* 180, 61 *N. E. 2d* 435, 159 *A. L. R.* 971 (*Ct. App.* 1945). In assessing a provision in a remedial and procedural federal statute that the act should govern "so far as practicable in cases pending when it takes effect," it was said that "the courts will not give retrospective operation to a statute which interferes with antecedent rights in the absence of an unequivocal expression in the statute that the Legislature intended that the statute should have such effect." *Hastings v. H. M. Byllesby & Co.*, 293 *N. Y.* 413, 419, 57 *N. E. 2d* 737, 740 (*Ct. App.* 1944). As said in *Shielcrawt v. Moffett, supra,* the line that separates a procedural statute which merely works a change in the form of the remedy or provides a new remedy for an existing wrong and a statute "which interferes with antecedent rights or

creates a remedy where none previously existed," is some-
times shadowy and indistinct, and "general principles" serve
as guides to the intention in a particular case "only where
better guides are not available"; they "govern in default
of the disclosure by the Legislature of a different intent."
It was pointed out by Lehman, C. J., that "changes of form
are often closely bound up with changes of the substance," and
"nice distinctions are often necessary," but in the end "it is
in considerations of good sense and justice that the solu-
tion must be found."

But here the legislative intention is not open to doubt.
The statute is made applicable, *N. J. S.* 2A:53A-4, "to all
actions for contribution commenced, and to all judgments
recovered, after the effective date" of the enactment, "irre-
spective of the time of the commission of the wrongful act
or acts by the joint tortfeasors; *provided,* that it shall not
apply with respect to payments made prior to the effective
date" thereof. The statutory right of action for contribution
accrues only on the payment by a joint tortfeasor of a money
judgment recovered against him for the injurious conse-
quences of the wrong; and by clear and imperative terms
the right is enforceable as to payments made on the under-
lying judgment after the law came into being, even though
the judgment was entered before. The payment beyond the
payor's *pro rata* share is the act which gives rise to the
statutory right of restitution.

Such is the obvious sense and significance of the
statute, for otherwise the proviso would be superfluous; and
it is fairly to be presumed that the lawgiver deemed the
proviso essential to the expression of the legislative intent
and purpose, as an assurance against misapprehension of the
prior terms. If the lawmaker intended to restrict the right
of contribution to payments made on judgments in tort
recovered after the law took effect, then manifestly there
would be no need for the proviso excluding from the opera-
tion of the act payments made before it came into existence.
There can be no doubt about this if the langauge is to have
its ordinary meaning; and, in the exposition of statutes,

the judicial interpretive function is to accord to the legislative expression its usual connotation and intendment, relating particular words and phrases to the context and the general object of the law. In all seeming, the phrase "and to all judgments recovered" has reference to judgments adjudicating both the primary liability in tort and the statutory right of contribution in one proceeding according to the third-party practice provided by R. R. 4:14–1, formerly *Rule* 3:14–1. *Vide Sattelberger v. Telep,* this day decided, 14 *N. J.* 353 (1954).

 Unlike the draft act submitted by the Commissioners on Uniform State Laws, 9 *U. L. A.* 156, our statute does not provide for contribution where the payment is made in fulfillment of a voluntary compromise or settlement of a claim for damages attributed to a joint tortfeasor. The act "shall apply" to "all actions for contribution commenced" after its effective date, provided only that the payment on the judgment debt is made after the law took effect. The operative act is the payment of more than the judgment debtor's *pro rata* share of the tort liability established by the judgment. Words are futile as symbols of expression if they are not given their normal meaning, taken and compared together as a unitary whole. The terms used here are plainly inapt if the purpose was to confine contribution to the damages ensuing from tortious conduct occurring, or to judgments in tort entered, after the act came into existence. If such was the intention, a simple sentence to that end would suffice; that interpretation would be in utter disregard of apparently meaningful associated provisions.

In historical perspective, all doubts as to meaning fade away. The measure originally adopted by the Legislature did not have the proviso. In the exercise of the power conferred by Article V, Section I, paragraph 14(b) of the State Constitution of 1947, Governor Driscoll submitted to the Legislature a conditional veto of the bill and recommended the inclusion of the proviso to narrow the broad coverage of the act as he read it. The Legislature accepted the recommendation, and the bill so revised is now the law under review. In his

message to the lawmaking body, the Governor said the bill as presented to him "would apply to 'All actions for contribution commenced' after its effective date"; and he inquired: "How far back may the tort judgment have been paid, as the basis for contribution now? What statute of limitations would apply?" It was quite plain, he said, that "these important questions should not be left in doubt." And he returned the measure proposing an amendment to include the proviso that is now part of the act in virtue of legislative acceptance of the recommendation.

The statute, so construed, does not work impairment of a constitutionally protected vested right within the principle of *State by Parsons v. Standard Oil Co.*, cited *supra*. While retrospective laws are generally deemed unjust and oppressive, the 1947 State Constitution does not in terms forbid the enactment of laws of this class. Article I, paragraph 1, secures—this among others not here pertinent—the "natural and unalienable right" of "acquiring, possessing, and protecting property." See, also, paragraph 20. The Federal Constitution specifically denounces retrospective laws impairing the obligation of contracts and laws *ex post facto* in nature, and now, by force of the due process clause of the Fourteenth Amendment, secures vested rights of property and otherwise against the operation of retrospective laws. *Johannessen v. United States*, 225 *U. S.* 227, 32 *S. Ct.* 613, 56 *L. Ed.* 1066 (1917); *City of Memphis v. United States*, 97 *U. S.* 293, 24 *L. Ed.* 920 (1878); *The Baltimore & S. R. Co. v. Nesbit*, 10 *How.* 395, 13 *L. Ed.* 469 (1850); *Watson v. Mercer*, 8 *Pet.* 88, 8 *L. Ed.* 876 (1834); *Downs v. Blount*, 170 *F.* 15 (*C. C. A.* 5 1909).

The term "vested right" is not defined in either the Federal or the State Constitution; but it would seem that, generally, the concept it expresses is that of a present fixed interest which in right reason and natural justice should be protected against arbitrary state action—an innately just and imperative right that an enlightened free society, sensitive

to inherent and irrefragable individual rights, cannot deny. Such seems to be the principle of *Campbell v. Holt*, 115 *U. S.* 620, 6 *S. Ct.* 209, 29 *L. Ed.* 483 (1885).

The defendant Rosenthal has no interest fairly within the protection of this principle. True, Greyhound could not invoke third-party practice to bring Rosenthal into the principal action as a party defendant, for that proceeding and the ensuing judgment antedate the statute. *Sattelberger v. Telep*, cited *supra*. But, on the hypothesis of a joint wrong, Rosenthal remained liable to the injured judgment plaintiff until the judgment against Greyhound and Miller was fully satisfied; and thus his liability in tort continued after the Contribution Law was adopted. Compare *Daly v. Singac Auto Supply Co.*, 103 *N. J. L.* 416 (*E. & A.* 1927). He remained liable to the judgment plaintiff in tort, jointly and severally, and subject to action accordingly notwithstanding the judgment. An unsatisfied judgment against one or more joint and several tortfeasors does not constitute a bar to actions against the remaining tortfeasors. The doctrine of election of remedies has no application. This principle has general acceptance. *Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 225 *U. S.* 111, 32 *S. Ct.* 641, 56 *L. Ed.* 1009 (1912); *Atwater v. Tupper*, 45 *Conn.* 144 (*Sup. Ct. Err.* 1877); *Ketelsen v. Stilz*, 184 *Ind.* 702, 111 *N. E.* 423, *L. R. A.* 1918 *D*, 303 (*Sup. Ct.* 1916); *Verhoeks v. Gillivan*, 244 *Mich.* 367, 221 *N. W.* 287, 65 *A. L. R.* 1083 (*Sup. Ct.* 1928); *Cleveland v. City of Bangor*, 87 *Me.* 259, 32 *A.* 892 (*Sup. Jud. Ct.* 1895); *Karcher v. Burbank*, 303 *Mass.* 303, 21 *N. E.* 2d 542, 124 *A. L. R.* 1292 (*Sup. Jud. Ct.* 1939); *Hunt v. New York, N. H. & H. R. Co.*, 212 *Mass.* 102, 98 *N. E.* 787, 40 *L. R. A., N. S.* 778 (*Sup. Jud. Ct.* 1912); *Sherwood v. Huber & Huber Motor Express Co.*, 286 *Ky.* 775, 151 *S. W.* 2d 1007, 135 *A. L. R.* 263 (*Ct. App.* 1941). See, also, *Restatement, Judgments, section* 94; 52 *Am. Jur.* 464. The choice of defendants, if there was a joint tort, was the injured plaintiff's, not the defendant's; there was no right of third-party joinder in the defendant under the old practice, for that would afford relief to persons

*in pari delicto* in disregard of the rule now abrogated for reasons of policy by the Contribution Law invoked here.

Contribution is an equitable principle of equality in the sharing of a common burden arising out of contract or status, to enforce restitution and prevent unjust enrichment, that at common law does not extend to persons in equal or mutual fault. Equality among those *in aequali jure* is a formula grounded in equity, good morals, and natural justice that is withheld from wrongdoers, save as provided by statute; but it is in its ultimate analysis a rule of policy designed also to serve the social and political well-being of the state by restraining a mischievous tendency, a concept that has undergone substantial modification to accord with altered social needs and the teachings and promptings of experience. Where each party is equally at fault, so runs the old rule, the law will not aid one as against the other. The law will leave the parties where it finds them. *In pari delicto, potior est conditio possidentis.* *Broom's Maxims* 290, 729. *Vide Sattelberger v. Telep,* cited *supra.*

It does not matter in this regard whether the injured person sues one or more of the joint tortfeasors separately or joins them in one action. Joint liability is not enough; payment is of the essence of the right of action, not only under the statute but also at common law in cases where contribution may be had, *De Paris v. Wilmington Trust Co.,* 7 Boyce, Del., 178, 104 A. 691, 1 A. L. R. 1352 (*Sup. Ct.* 1918); and, since the statutory remedy is applicable only to payments made after the adoption of the act, at a time when the joint and several liability in tort of the wrongdoers still subsists, there is no invasion of a vested right. The right of contribution arises out of a payment in excess of the payor's just share of the common obligation ensuing from a common wrongful act, neglect or default—a change of policy equally beneficial to all joint tortfeasors. The common liability having been theretofore enforceable against one or more less than all of the joint offenders at the election of the injured person, without the benefit of contribution, the enabling statute did not in-

crease the liability of any of the participants in the wrong, but rather lessened it by providing for a just distribution of the common burden in lieu of the arbitrary choice given to the injured person. The whole responsibility cannot now be made to rest upon one tortfeasor even though there are joint wrongdoers able to bear it. It is but a change of remedy without impairment of substantial rights. The inequality emanating from the payment is the thing redressed.

There is in the particular circumstances no vested right to "protection against contribution." Charging the joint tortfeasor with the benefit accruing to him from the removal of the common burden, according to equity and essential justice, does not constitute a new or additional obligation; quite the contrary. The joint wrongdoer does not have a vested right to the payment thus made in his behalf by his co-tortfeasor. The Contribution Law "has now remedied this inequality and lessened a liability depending upon the chance of the plaintiff's choice"; the inequality arises from the payment of the joint wrongdoer's proportionate share of the liability; his several liability for the whole is "reduced to a *pro rata* share with his" co-tortfeasors; the "change relates to the remedy—to an unnecessary and unjust inequality in procedure." *Deuscher v. Cammerano,* 256 *N. Y.* 328, 176 *N. E.* 412 (*Ct. App.* 1931). To the same effect: *First National Bank of Ovid v. Steel,* 136 *Mich.* 588, 99 *N. W.* 786 (*Sup. Ct.* 1904).

This regulation of the relative rights and duties of the joint wrongdoers to avoid injustice, in keeping with altered concepts of social policy, applicable to payments *in futuro,* is a legitimate legislative province having none of the characteristics of arbitrary action. The incidence of the payment involved a question of legislative judgment. There was no indefeasible right under the old law to the refusal of contribution between joint tortfeasors after the commission of the wrong itself; it is in no sense property, and it is not natural right, but the creation of conventional law. *Campbell v. Holt,* cited *supra; Nelson v. Westland Oil Co.,* cited *supra.*

■ It is urged that the filing of the *supersedeas* bond constituted "payment of the judgment at that time" within the intendment of the later enacted Contribution Law, and the remedy thereby provided is not applicable. We take a different view.

The very purpose of the bond was to stay execution pending the appeal, and thus to avoid involuntary payment of the judgment while its validity was under review. The bond was conditioned on payment of the judgment only in the event of the dismissal of the appeal or the affirmance of the judgment. It was a mere security for the payment in the event of the fulfillment of the stipulated condition; it was plainly not payment of the judgment itself within the intendment of the Contribution Law. Compare *Blut v. Kalz*, 13 *N. J.* 374 (1953).

## II.

■ But it is insisted that "the immunity resulting from the husband-wife relationship between the injured person and one of the tortfeasors prevents a right of recovery by the other tortfeasor."

The argument is that the statutory right of contribution "is fundamentally a derivative one," dependent "upon the existence of an original enforceable claim by the injured person against the joint tortfeasor"; that "the immunity between husband and wife" bars "a recovery by a joint tortfeasor against the spouse of the injured person," and thus the marriage of the judgment plaintiff Goldstein and the defendant Rosenthal "extinguished whatever right of action she may have had against him for the premarital tort," and so there is no basis for contribution. It is said, in a word, that the wife may not have "indirect enforcement" of a "claim or judgment" not enforceable directly against her husband, for reasons of policy deemed sufficient by the law.

The vice of this reasoning is obvious. The considerations of marital unity and domestic peace and felicity underlying

the ancient policy interdicting actions between spouses, *Bendler v. Bendler*, 3 *N. J.* 161 (1949), have no place here. The payment of the judgment in tort which gave rise to the cause of action for contribution extinguished the defendant Rosenthal's liability under the judgment to the plaintiff Goldstein and the latter's cause of action in tort which had merged in the judgment; and their subsequent marriage could have no effect whatever on the accrued right of action for contribution under the statute. This is axiomatical truth.

The enforcement of contribution would not trench upon the policy of the rule of *Bendler v. Bendler*, cited *supra*. At the time of the satisfaction of the judgment in tort, there existed between the plaintiff and the defendant in this proceeding the common liability in tort which is basic to the statutory right of contribution, as a means of equalizing the common burden. To hold that the marriage of the judgment plaintiff and the judgment defendant Rosenthal, after the satisfaction of the judgment, served to defeat the accrued right of contribution would be to ignore the spirit and outstanding policy of the statute.

The continued subsistence of the common liability is not a *sine qua non* to enforcement of contribution under the statute. Contribution is not to be confused with subrogation. Subrogation gives to the payor of the common obligation all the rights and remedies of the obligee; contribution is the right, in this case under the statute, to be reimbursed for payments on the joint liability in excess of the payor's just share. Compare *Godfrey v. Tidewater Power Co.*, 223 *N. C.* 647, 27 *S. E.* 2d 736, 149 *A. L. R.* 1183 (*Sup. Ct.* 1943); *Central Banking & Security Co. v. United States Fidelity & Guaranty Co.*, 73 *W. Va.* 197, 80 *S. E.* 121, 51 *L. R. A., N. S.*, 797 (*Sup. Ct. App.* 1913); *Lit Bros. v. Goodman*, 144 *Pa. Super.* 43, 18 *A.* 2d 519 (1941). See, also, *Clement v. Atlantic Casualty Insurance Co.*, 13 *N. J.* 439 (1953); *Hudson v. Gas Consumers Association*, 123 *N. J. L.* 252 (*E. & A.* 1939).

The judgment is accordingly affirmed.

390

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.